UNIVERSITY OF ALASKA, Appellant,

v.

Judy TOVSEN, Appellee.

No. S–4205.

Supreme Court of Alaska.

June 26, 1992.

Peter C. Partnow, Katheryn Bradley, Condon, Partnow & Sharrock, Anchorage, for appellant.

Sandra K. Saville, Eric R. Cossman, Law Offices of Sandra K. Saville, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

In this appeal the University of Alaska challenges the decision of the superior court nullifying the University's termination of Judy Tovsen, a probationary employee. The superior court ordered the University to reinstate Tovsen with full back pay. We affirm in part, reverse in part, and remand with instructions.

### II. FACTS AND PROCEEDINGS

The University hired Tovsen on September 26, 1988, to serve as a mail clerk. Under University personnel regulations, new employees are on probationary status for the first six months of their employment. Univ.Reg. 04.01.06. Because other employees had applied for the same position, the selection of Tovsen generated tension in the mail room. There were complaints about Tovsen's performance. On October 20, 1988, Sid Reed, Tovsen's supervisor, informed her that her job performance was unacceptable. In a letter, he gave her one week to demonstrate improvement. On October 28, 1988, when he was

informed that she was still behind in her work, Reed terminated Tovsen.

Tovsen filed a written grievance claiming that Reed's decision was an abuse of discretion. After an evidentiary hearing, the University Grievance Council found that "[Reed's] reasons for terminating [Tovsen] were inaccurate." According to the Council, Tovsen's performance was not "judged objectively" and she had not been given adequate time or training to learn her job. The Council found that Reed had been negligent in supervising, training and evaluating Tovsen.

Despite these findings, the Grievance Council recommended against reinstating Tovsen to her former position. The Council believed that University Regulation 04.-01.06 gave Reed the discretion to terminate Tovsen without just cause based on his subjective dissatisfaction with her performance. Chancellor Behrend accepted the Council's decision. Following an administrative appeal, University President O'Dowd affirmed.

Tovsen appealed to the superior court. Judge Madsen ruled that University Regulation 04.01.06 did not give a supervisor authority to terminate a probationary employee based on the supervisor's subjective dissatisfaction. As a result, the court ordered that Tovsen be reinstated to her probationary position with back pay from the date of termination until the date of reinstatement. The University appealed the superior court's decision.

## III. DISCUSSION

■ This case hinges on the correct interpretation of University Regulation 04.-01.06.[1] The University interpreted the regulation to be analogous to a "satisfaction" contract, which grants the probationary employee's supervisor the authority to terminate an employee whenever the supervisor is personally and in good faith unsatisfied with the employee's performance.

The existence of "satisfaction" contracts is well established.

> Most courts agree that a contract by which one agrees to employ another as long as the employer is satisfied with the services rendered gives the employer the right to terminate the contract and discharge the employee whenever ... the employer, acting in good faith, is actually dissatisfied with the employee's work....

53 Am.Jur.2d, *Master and Servant,* § 37, p. 113 (1970).

As for identifying when such a contract exists, one authority has noted that

> [t]his type of contract almost always arises when there is an express representation, either in a communication from the employer or in a document assented to by it, that the employee is to serve "as long as his services are satisfactory to the employer," or words to that effect; that is it is usually clear whether the parties have entered into such a contract.

John C. McCarthy, *Recovery of Damages for Wrongful Discharge 2d,* § 3.53 at 286 (1990).

In *Johnson v. Jefferson County Board of Health,* 662 P.2d 463, 471 (Colo.1983), the Colorado Supreme Court, interpreting a personnel rule that a county public health officer "shall be appointed ... to serve at the pleasure of the board," noted that "an employee who serves 'at the pleasure' of his employer generally may be discharged at any time without cause or formal procedure."

Tovsen, on the other hand, argues that the University's regulation requires objec-

---

**1.** University Regulation 04.01.06 reads as follows:

*Probationary Status at Time of Hire*

All non-exempt and exempt (non-faculty) employees shall be in probationary status for the first six months of employment. The performance of these employees shall be evaluated prior to the end of the probationary period.

A. If the employee's performance is found to be satisfactory, probationary status shall cease.

B. If the employee's performance is found to be unsatisfactory, the employee will be terminated.

C. If the employee's performance is found to be minimally acceptable, the probationary status may, at the discretion of the supervisor, be extended.

tive "just cause" for the termination of a probationary employee. She bases this argument on two grounds: 1) that the regulation is unlike typical satisfaction clauses; and 2) that the language of the regulation requires an objective failure to meet acceptable standards. We agree with Tovsen on both counts.

■ University Regulation 04.01.06(B) states that "[i]f the employee's performance is found to be unsatisfactory, the employee will be terminated." The determination of satisfaction is not explicitly tied to the personal judgment of the employer as it is in most satisfaction contracts. McCarthy, *supra*, at 286. Given the first part of University Regulation 04.01.06, which states that "[t]he performance of these employees shall be evaluated prior to the end of the probationary period," the regulation more clearly resembles an agreement permitting termination only when objective standards of performance are not satisfied.[2] In addition, the regulation itself directs that "[t]he performance of [probationary] employees ... be evaluated"; a probationary employee may be terminated if his or her "performance is found to be unsatisfactory." Use of the words "found" and "evaluated" also suggests a process involving objective standards rather than mere personal beliefs.

Our conclusion that University Regulation 04.01.06 requires an objective just cause termination is supported by our decision in *Eales v. Tanana Valley Medical–Surgical Group, Inc.*, 663 P.2d 958 (Alaska 1983). In *Eales* we indicated that an employer's representation to Eales "that so long as he was properly performing his duties he would not be discharged" meant that he could not be terminated without just cause. *Id.* at 959; *see also Danzer v. Professional Insurors, Inc.*, 679 P.2d 1276, 1280 (N.M.1984) (a contract indicating that an employee must "perform his duties 'to the reasonable satisfaction of his employer'" required "termination for good cause"); *Stauter v. Walnut Grove Products*, 188 N.W.2d 305, 309 (Iowa 1971) (an oral agreement which provided that the plaintiff was to be employed as long as he was able to competently perform the services was not a contract under which the employee serves only to the satisfaction of the employer).

■ In the present case the Grievance Council found that Tovsen's termination was not supported by just cause. Therefore its recommendation that Tovsen not be reinstated was wrong as a matter of law.

Under the University's grievance procedures, the Council's decision was merely a recommendation to the Chancellor.[3] How-

2. We use the term "objective standards" to mean standards that exist by reference to external sources such as employee rules and regulations or standards that a reasonable person would use in evaluating an employee's performance.

3. Regulation 04.04.01(F), (G), (H) & (I) provides:

F. *Conduct of Hearings*
At the hearing at the Chancellor level, each party shall have these rights: To call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues, even though that matter was not covered in the direct examinations; to request that the hearing be open to the public; to impeach any witness regardless of which party called him/her to testify; and to rebut the evidence against him/her. If a party does not testify in his/her own behalf, he/she may be called and examined as if under cross-examination. The parties may be

advised by legal counsel, but legal counsel may not make formal appearance, nor speak or ask questions in a party's behalf. If the grievant is unable to effectively present his/her own case, for reasons acceptable in the discretion of the Grievance Council, the grievant may choose to have his/her case presented by another group, who shall not be a lawyer.

Hearings need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law of statutory rule which might make improper the admission of such evidence over objection in civil or criminal actions. The rules of privilege shall be effective to the same extent that they are now or hereafter may be recognized in civil actions, and irrelevant and unduly repe-

ever, Chancellor Behrend's written decision adopted the legal conclusions of the Grievance Council. President O'Dowd's decision on the administrative appeal did so as well. Since University Regulation 04.01.06, correctly interpreted, requires just cause for termination of probationary employees, these decisions must be reversed.

Judge Madsen ordered reinstatement with back pay from the date of termination until the date of reinstatement. This remedy, however, is inappropriate at this stage because the Chancellor has the power to reject the recommended findings of the Grievance Council that Tovsen's dismissal was not supported by good cause. Thus this case should be remanded to the Chancellor with directions to him to exercise his

fact finding responsibilities in accordance with part (H) of the grievance regulation. The Chancellor's factual findings must be in writing, Regulation 04.04.01(H), and they must be supported by the evidence.[4]

## IV.  CONCLUSION

We affirm the decision of the superior court, reversing the decision of the University President which upheld the termination of Tovsen. We vacate the decision of the superior court insofar as it ordered Tovsen to be reinstated and awarded her back pay. Instead, the superior court on remand should remand the case to the Chancellor so that he may exercise his independent fact finding responsibilities under University grievance procedures.

titious evidence or scandalous evidence shall be excluded. The local Grievance Council shall rule on all matters of evidence and procedure in their discretion giving special weight to the need for speedy resolution of the grievance, the desirability of keeping the proceedings as simple and informal as possible, and the interests of justice and fairness. Continuances or further hearings are not favored. Parties with rights affected by the same issues may be joined in the same hearing if possible; all related grievances by one person shall be heard in the same hearing, if possible. A grievance may be settled at any time.

G. *Council Recommendations*

The Council will submit a report of its deliberations and recommendations to the Chancellor within five (5) working days of the conclusion of the hearings.... The report will include:

1. A copy of the grievant's written complaint, and a supplemental statement of issue by the Council, if necessary.

2. A summary of facts determined by the Council through its investigation and hearing.

3. The recommendation as to whether the Chancellor should find that there was a violation, misinterpretation or misapplication of university policies and regulations, or an abuse of discretion.

4. Recommendation, if any, concerning possible action to be taken.

H. *Chancellor's Decision*

The Chancellor will inform the grievant and other parties at interest of the Council's findings, and the Chancellor shall render a written decision within ten (10) working days; copies of the Chancellor's decision shall be

given to the grievant, and the other parties at interest, and to the University Counsel. The decision of the Chancellor shall be final unless appealed to the President by any party.

I. *Appeals*

Appeals to the President must be taken within fifteen (15) working days after the written decision of the Chancellor is given. A decision not appealed within the time limits provided shall be considered accepted by the parties as a satisfactory settlement of the matter. The appeal to the President shall be upon the record as made before the Council. Hearings conducted by the President or designee shall be conducted as provided for hearings before the local Grievance Council.

The decision of the President shall be final.

4. If the Chancellor agrees with the recommended findings of the Grievance Council, Tovsen should be reinstated to her former position with five months remaining to be served in probationary status. In addition, she should be entitled to back pay from the date of termination until the date of reinstatement. In such circumstance, the usual rules for determining back pay will apply:

[A] wrongfully discharged employee is entitled to the total amount of the agreed upon salary for the unexpired term of his employment, less what he could earn by making diligent efforts to obtain similar employment.

5 A. Corbin, *Contracts* § 1095 (1964).

*Skagway City School Board v. Davis,* 543 P.2d 218, 225 (Alaska 1975). Further, amounts actually earned from any type of substitute employment incompatible with Tovsen's prior employment must be deducted. *Redman v. Dept. of Education,* 519 P.2d 760, 771 (Alaska 1974).

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.[5]

5. The University has raised a number of other points on appeal. We have reviewed them and find that they clearly lack merit.