David S. WITT, Appellant,

v.

STATE of Alaska, DEPARTMENT
OF CORRECTIONS, Appellee.

No. S–10564.

Supreme Court of Alaska.

Aug. 8, 2003.

Benjamin I. Whipple, Palmer, for Appellant.

Jan Hart DeYoung, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

David Witt appeals from the superior court's grant of summary judgment in favor of the state in his breach of contract suit. Witt, a former public employee, contends that he was terminated before the end of his probationary period in violation of his union's

collective bargaining agreement and in violation of the covenant of good faith and fair dealing. Because Witt does not raise any genuine disputes of material fact through admissible evidence, but instead merely makes allegations of wrongdoing, we affirm the superior court's grant of summary judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

David Witt was hired by Alaska Correctional Industries (ACI) in the Department of Corrections in the summer of 1998 as an "equipment operator IV." His responsibilities included transporting inmate-produced office furniture and meat products in Palmer, Kenai, and Anchorage, which sometimes involved the supervision and transportation of inmate laborers who assisted him. He understood that he would have to complete a six-month probationary period and that "permanent employment was contingent on successful performance in the position." As a probationary employee he was a member of the labor, trades, and crafts bargaining unit, and was represented by Public Employees Local No. 71. Article 7.04 of the collective bargaining agreement (CBA) between the State of Alaska and Local 71 contained certain restrictions on the state's ability to contract with private vendors, if such contracting "would directly result in the layoff of permanent or probationary employees covered by this Agreement": the CBA required the state agency to do a "cost efficiency study" showing that contracting would save the state money, and required contractors to pay their employees an amount equivalent to the union wage plus benefits.

Upon his hiring, Witt was provided with and signed a copy of the Department of Corrections's "Code of Ethics and Standards of Conduct," which warned employees who work directly with inmates to "travel only to and from authorized destinations without any unauthorized stops" and to avoid "use of indecent, abusive or profane language." Nonetheless, in October 1998 Witt tried to take several inmates on an unauthorized trip to a pizza restaurant in Kenai. Soon afterward Witt was given additional transporta-

tion security training, including instructions that those working with inmates should avoid giving inmates personal information, such as a home telephone number. On December 21, 1998 Witt took two inmates to a coffee stand near his house, and may have allowed the inmates in his house. Later in the day Witt entered into a verbal altercation with an inmate and a fellow employee that culminated in Witt's use of several profanities and the statement "I don't care any more. Go ahead [f]ire me, I just don't care." After investigating the incidents of December 21, Witt's supervisor, William Quam, informed Witt that he would not be retained because of the incidents in October and December. Witt was terminated effective January 14.

On May 6, 1998, roughly two months before Witt had begun work, Quam had received an e-mail from Wally Roman, his supervisor at ACI. In the e-mail Roman noted that ACI had previously made a series of contracts with World Wide Movers that collectively exceeded $5,000, and asked Quam to prepare a "Request for Proposals" for bidding for future services. The request for proposals was drafted and eventually issued as an "invitation to bid" on December 22, 1998, which was the day after Witt lost control in the office. The invitation to bid called for services including delivery of meat products and "Point to Point freight, delivery, warehousing, and installation/repair services for the Alaska Correctional Industries" for Juneau, Anchorage, Fairbanks, and other area locations. It called for sealed bids to be submitted on January 15, 1999, which was the day after Witt's final day of work. Ultimately the invitation to bid was revised, reissued in April 1999, and did not result in a contract until May 1999. The parties agree that ACI never performed a cost efficiency study in relation to the invitation to bid issued on December 22, 1998.

### B. Proceedings

After his dismissal, Witt filed a grievance against the Department of Corrections through his union. The union initially pursued Witt's grievance, but the union grievance committee eventually decided to drop the grievance. Witt then filed suit in con-

tract and tort in the superior court, alleging that ACI had hired him in the summer of 1998 with the intention of terminating his position as soon as the private bidding process began in the winter, and that the stated reasons for his termination were a sham. Superior Court Judge Eric Smith dismissed Witt's tort and punitive damages claims. Judge Smith then granted the state's motion for summary judgment on the remaining contract claims, finding that Witt was an at-will employee, that Witt had no reasonable expectation that he would retain his job, and that neither the CBA nor the covenant of good faith and fair dealing required the state to notify Witt if the state had intended to replace his position with a private contractor. Witt moved for reconsideration under Alaska Civil Rule 77(k)(1)(ii)[1] and relief from the judgment under Alaska Civil Rule 60(b)(1).[2] Judge Smith denied the motions. Witt appeals.

## III. STANDARD OF REVIEW

■ We interpret the language of contracts *de novo*.[3] Grants of summary judgment are reviewed *de novo*, reading the record in the light most favorable to the nonmoving party and making all reasonable inferences in its favor as well.[4] Summary judgment is affirmed when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[5] We have stated that "[t]he party opposing summary judgment must set forth specific facts showing genuine issues and cannot rest on mere allegations;"[6] moreover, such facts must "arise from admissible evidence."[7]

## IV. DISCUSSION

### A. Witt Was an At–Will Employee and Was Not Entitled to Dismissal Only for Good Cause.

■ Witt suggests that ACI's statements that permanent employment was contingent upon successful performance in the probationary position converted his employment contract from an at-will contract into one in which he could be dismissed only for good cause. A review of Alaska law refutes this contention.

■ The Alaska Constitution mandates that public employment will be governed by the merit principle.[8] Alaska Statute 39.25.150(7) provides that all public employees will have a probationary period not exceeding one year. The purpose of the probationary period is "to evaluate the employee's work and to reject any employee whose performance is not acceptable."[9] In prior cases addressing whether public probationary employees are at-will employees, we have looked to their contracts to determine whether they are protected by objective performance standards or whether, conversely, they serve merely at the pleasure of their employer. For instance, where a contract explicitly requires performance evaluations[10] or makes reference to the Rater's Guide to Performance Appraisals,[11] we have found the employee to be protected. Nothing in Witt's contract or ACI's statements does this. When

1. Alaska R. Civ. P. 77(k)(1) provides in relevant part that "[a] party may move the court to reconsider a ruling previously decided if, in reaching its decision: . . . (ii) The court has overlooked or misconceived some material fact or proposition of law."

2. Alaska R. Civ. P. 60(b) provides in relevant part that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect."

3. *Simmons v. Ins. Co. of N. Am.*, 17 P.3d 56, 59 (Alaska 2001).

4. *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002).

5. *Id.*

6. *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 144 (Alaska 1991).

7. *Brady v. State*, 965 P.2d 1, 8 (Alaska 1998).

8. ALASKA CONST. art. XII, § 6.

9. 2 Alaska Administrative Code (AAC) 07.240 (2002).

10. *Univ. of Alaska v. Tovsen*, 835 P.2d 445, 447 (Alaska 1992).

11. *Cassel v. State, Dep't of Admin.*, 14 P.3d 278, 283–84 (Alaska 2000).

Witt was told that permanent employment was contingent upon his successful performance in the position, this was no more than a description of the function of the probationary period in hiring permanent public employees. During the probationary period Witt was an at-will employee and was not entitled to dismissal only for good cause.

**B. Witt Did Not Present Admissible Evidence Leading to Genuine Disputes of Fact About Why He Was Hired or Why He Was Dismissed, and Summary Judgment on His Covenant of Good Faith and Fair Dealing Claim Was Appropriate.**

Witt claims that his hiring and firing were part of an elaborate ruse designed by ACI to save money by avoiding the CBA's restrictions on private contracting. He contends that ACI hired him to cover a gap in transportation services that was allegedly created when ACI began preparing a proposal for an ongoing service contract with a private vendor; that ACI never intended to allow him to stay on as a permanent employee and lied to him about that intent; and that ACI's stated reasons for terminating his probation were pretextual. As a result, Witt alleges breaches of the covenant of good faith and fair dealing, which "[i]n the employment contract context ... operates as a check on employers' traditional freedom to terminate at-will employment for any reason." [12]

 The covenant can be breached objectively or subjectively. The objective prong of the covenant is breached when an employer fails to act in a manner that a reasonable person would consider fair, which includes treating similarly situated employees disparately, terminating employees on unconstitutional grounds, and terminating employees in violation of public policy. [13] The subjective prong of the covenant is breached when an employer is motivated by the goal of depriving the employee of a benefit of the contract. [14] The purpose of the covenant is to effectuate the reasonable expectations of the parties, not to alter or to add terms to the contract. [15] Although a court can certainly conclude as a matter of law that an employer did not breach the covenant when no material facts are disputed, generally whether the covenant has been breached is a question for the trier of fact. [16]

 Witt's good faith and fair dealing claims depend on his presenting genuine disputes of several material facts. When reviewing a motion for summary judgment, we read the record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor, but the non-moving party "must set forth specific facts showing genuine issues and cannot rest on mere allegations," [17] and such facts must "arise from admissible evidence." [18] Because we conclude that no genuine disputes of material fact exist, we affirm the superior court's grant of summary judgment.

1. **There is no admissible evidence implying that Witt was hired as a "stopgap" to meet ACI's transportation needs until its private contractor bidding process was complete.**

 The crux of Witt's argument is that Quam and Roman hired him only "as a stopgap while the bid process materialized" and never intended to entertain the possibility that Witt might stay on as a permanent employee. Witt points primarily to two pieces of evidence. The first is the e-mail of May 6, 1998 that Roman sent to Quam asking him to prepare the request for proposals (RFP) from private bidders for transportation services, which reads in relevant part:

---

12. *Era Aviation, Inc. v. Seekins,* 973 P.2d 1137, 1139 (Alaska 1999).

13. *Charles v. Interior Reg'l Hous. Auth.,* 55 P.3d 57, 62 (Alaska 2002).

14. *Holland v. Union Oil Co. of Cal., Inc.,* 993 P.2d 1026, 1032 (Alaska 1999).

15. *Seekins,* 973 P.2d at 1141.

16. *Holland,* 993 P.2d at 1032–33.

17. *Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 144 (Alaska 1991).

18. *Brady v. State,* 965 P.2d 1, 8 (Alaska 1998).

Talked with Al this AM regarding our previous [World Wide Movers] services. Al indicated that we need to establish a RFP for these services. While our individual purchases are under $5,000, the combined purchases would be over. Up to this point, our purchases could be considered a pilot project to see if we could have one vendor provide transportation, storage, and installation services. Now that we have established that it would be in the best interest of the state, we should put forth a RFP for a "non-professional service" to establish a contract.

It would be our choice to request statewide or regional for [the] award. Al seems to think that regional might provide better pricing.

Could you prepare a RFP to secure these services. I know you have a lot going on so maybe we better discuss timeframes for completion next week.

Witt alleges that this e-mail shows an intent to have vendors take over *all* transportation and related services for ACI, including those previously provided by state employees. In response, the state offers an affidavit of Quam stating that (1) ACI contracted with private vendors before and during Witt's employment on an as-needed basis, and (2) the RFP was required by the procurement staff of the Department of Corrections because of the level of expenditures on vendors.[19] Witt does not address either of these contentions.

Second, as evidence of ACI's intent not to keep him on permanently, Witt points to the fact that ACI terminated his probation effective on January 14, 1999 rather than on January 20, the date it would have expired on its own. Witt claims that Roman and Quam wanted to eliminate his position before the January 15 deadline for replies on the invitation to bid. In response, Quam's affidavit states that the invitation to bid was later revised and re-issued, finally resulting in a contract in May 1999.

Even drawing all reasonable inferences in Witt's favor, we do not find that Witt has raised a genuine dispute about ACI's intentions when it hired him. Roman's e-mail, on which Witt principally relies for the proposition that his job was intended to be temporary, makes no reference at all to how the request for proposals might affect the allotment of transportation tasks between private vendors and ACI's in-house transportation employees. Witt presents no other evidence addressing that allotment. Witt does not address the assertion that ACI contracted with private vendors during the course of his employment, which rebuts his "stopgap" theory. Witt himself provided only regional transportation services at most, whereas the invitation to bid covered the entire state. Finally, Witt's probation expired on January 20, only five days after bids were due, which would not provide ACI sufficient time to agree upon and implement a contract that would provide the services lost through Witt's dismissal. An inference in Witt's favor on this point would not be reasonable, and we therefore find no genuine dispute of fact on this issue.

2. **There is no admissible evidence implying that Witt was dismissed for any reason other than poor job performance.**

■ Witt alleges that Quam and Roman's reasons for terminating Witt were "pretextual." The reason given to Witt at the time, which is echoed in Quam's later affidavits, was that in the incidents of October and December 1998 Witt breached security and showed poor judgment in his supervision of inmates. Witt admits these incidents, and at the time of the December 1998 dispute said that he "[took] full responsibility for my bad conduct and any consequences arising from it." Witt does not now claim that these events did not take place, that these events somehow were not his fault, or that other employees in a similar position would not have expected to be dismissed for similar conduct, and he does not rebut the state's assertion that these incidents were in fact the reason why Witt was fired. Rather, Witt's argument appears to be only that the fact of his dismissal is consistent with his theory that ACI never intended him to be a permanent employee. Witt has not shown the exis-

19. *See* 2 AAC 12.400 (describing administrative authority to make small purchases).

tence of a genuine dispute of fact on this issue.

**3. In the absence of any genuine dispute of material fact, the superior court's grant of summary judgment on Witt's breach of the covenant of good faith and fair dealing claim was reasonable.**

Witt's claims are heavily dependent on the disputed facts he hopes to develop at trial. But because Witt has not "set forth specific facts showing genuine issues," and instead "rest[s] on mere allegations," [20] the state is entitled to judgment as a matter of law. Witt claims that the covenant of good faith and fair dealing was violated by ACI's entry into an employment contract it did not intend to honor. As noted above, the covenant of good faith and fair dealing requires employers to treat employees alike and to refrain from impairing an employee's ability to receive the benefits of the employment.[21] We have previously explained that the standard of factual showing required to defeat a summary judgment motion in a covenant of good faith claim is not negligible: "If the employee were entitled to jury trial for breach of the implied covenant of good faith and fair dealing merely by asserting that the charged misconduct was not true, the decision to terminate would be at the discretion of a jury, not the employer." [22] Because Witt has not introduced admissible evidence tending to show that he was hired or fired for an improper reason, he has no claim that he did not receive the exact benefit of probationary employment: the opportunity to prove himself as a worthwhile employee. The state is entitled to summary judgment as a matter of law.

**C. Witt Did Not Present Admissible Evidence Leading to a Genuine Dispute of Fact About Whether His Job Was Eliminated Through Contracting, and Summary Judgment on His Collective Bargaining Agreement Claims Was Appropriate.**

Witt alleges that ACI breached article 7.04 of Local 71's CBA by failing to do a cost efficiency study, to inform bidders of union pay requirements, or to require bidders to provide information about their wage rates. Witt also claims that the unfair labor practices clause of the Alaska Public Employment Relations Act [23] requires us to find an implied duty on ACI's part to inform Witt and the union that his job would be lost to contracting. However, the CBA required the state to do none of these things unless the contracting at issue actually would result in the loss of a probationary or permanent union job.[24] Unless Witt can raise a genuine dispute about whether his job was replaced, these claims cannot survive summary judgment. Witt argues that his job must have been performed by private vendors after he was dismissed because his own job duties, which included the transport of office furniture and meat products in the Anchorage area, were so similar to the services that were the subject of the invitation to bid. He also notes that the invitation to bid spoke of freight volume in terms of ACI's "recent experience," and argues that this shows that vendors were to take on all of ACI's freight needs.

But in light of Quam's unrebutted affidavit stating that ACI used private ship-

**20.** *Braun,* 816 P.2d at 144.

**21.** *Holland,* 993 P.2d at 1032.

**22.** *Id.* at 1035 (quoting *Burton v. Sec. Pac. Nat'l Bank,* 197 Cal.App.3d 972, 243 Cal.Rptr. 277, 281 (1988)). In his reply brief Witt suggests that we use the shifting-burdens framework from employment discrimination law as a justification for allowing his claims to go forward. Issues raised for the first time in the reply brief are deemed waived. *Childs v. Tulin,* 799 P.2d 1338, 1340 n. 5 (Alaska 1990). Moreover, application of this framework in this case would be inappropriate

as Witt has not alleged that ACI was motivated in any way by any sort of discrimination.

**23.** AS 23.40.110(a)(5).

**24.** CBA's are contracts that this court interprets *de novo,* giving effect to the reasonable expectations of the parties. *Larsen v. Municipality of Anchorage,* 993 P.2d 428, 431 (Alaska 1999). Witt also argues that he was a third-party beneficiary of the CBA. In light of our ruling that Witt has not raised a genuine dispute of fact about whether the CBA was breached, we need not evaluate this claim.

ping vendors before and during Witt's employment at ACI, this is not a reasonable inference. Rather, it is entirely reasonable that ACI should choose to utilize both private vendors to make large periodic deliveries and in-house employees who could take care of daily transportation needs as they arose. ACI's "recent experience" as described in the invitation to bid could just as easily have referred to ACI's recent experience with private shipping vendors as to the combined services of private vendors and in-house employees. Moreover, Witt's theory requires us to overlook the fact that his job duties would have had to go completely unfulfilled for five months after his dismissal until the private vending contract was finalized in May. It is unfortunate that there is no evidence in the record to show who performed Witt's job tasks after he was not retained. But it is Witt's duty as the non-moving party to respond to ACI's evidentiary showing with specific, admissible facts showing a genuinely disputed issue,[25] and we cannot find that he has done so here. Summary judgment was appropriate on this claim.[26]

## IV. CONCLUSION

Because Witt does not raise any genuine dispute of material fact through admissible evidence, but instead merely makes allegations of wrongdoing, we AFFIRM the superior court's grant of summary judgment.

---

**25.** *Brady v. State,* 965 P.2d 1, 8 (Alaska 1998); *Braun,* 816 P.2d at 144.

**26.** Witt alleges in his points on appeal that the superior court erred in denying his motion for reconsideration, but he fails to brief the issue. Issues not briefed are deemed waived. *DeNardo v. ABC Inc. RVs Motorhomes,* 51 P.3d 919, 928 & n. 47 (Alaska 2002).