Lucy OKPIK, Appellant,

v.

CITY OF BARROW, Alaska, Appellee.

No. S-13195.

Supreme Court of Alaska.

April 30, 2010.

---

51. *Id.*

52. *Midgett v. Cook Inlet Pre-Trial Facility,* 53 P.3d 1105, 1112 (Alaska 2002).

53. *See Bustamante,* 59 P.3d at 274.

Michael J. Walleri, Law Offices of Michael J. Walleri, Fairbanks, for Appellant.

Greg Dorrington, Matthew Singer, and Howard Trickey, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

An employee of the City of Barrow (Barrow) who served as finance director for nearly eight years resigned after learning the mayor was demoting her to the position of senior accountant. She filed suit alleging violation of her right to due process under 42 U.S.C. § 1983, alleging violation of the Alaska Whistleblower Act, and alleging wrongful termination and intentional and negligent infliction of emotional distress. The superior court granted summary judgment for Barrow

on all claims. We affirm the grant of summary judgment on the employee's § 1983 claim because she was an at-will employee and had no property interest in continued employment. Because the employee did not make a report to a public body or participate in an investigation while employed, we also affirm the superior court's grant of summary judgment on the whistleblower claim. But the employee presented sufficient admissible evidence to create genuine issues of material fact as to whether her demotion was wrongful. We therefore reverse the grant of summary judgment on the wrongful termination claim.[1]

## II. FACTS AND PROCEEDINGS

### A. Facts

Lucy Okpik began working for the City of Barrow in 1994 as chief accountant. In 1997 the then-mayor appointed her to the position of finance director, a position that includes budget duties and payroll oversight.

Nathaniel Olemaun was elected mayor in October 2004. Shortly after his election, Olemaun sent a memorandum to "All Staff" stating he was placing city employees "holding mayoral appointee positions"—the finance director, grants administrator, and administrative assistant—in "acting" status.

Before Olemaun's election, the approved mayoral pay was $47.49 per hour. It is undisputed that from October 2004 to March 2005 Olemaun was paid about $70 per hour, resulting in an overpayment of nearly $20,000. It is also undisputed that both Olemaun and Okpik knew he was being overpaid during this time, but the parties dispute how and why the overpayment occurred.

It was Okpik's job to prepare the payroll for Barrow employees. Okpik asserts that Olemaun brought a blank personnel action form to her shortly after he was elected. She recalls that she showed him the budget, including his rate of pay, that the mayor left, but later returned, and that when Okpik again showed him his rate of pay, he expressed that the pay was too low. According to Okpik, the mayor's assistant Susan Atos later told her that the mayor wanted his pay

calculated at a higher rate. Okpik testified that neither she nor Atos wrote the higher rate of pay on the personnel action form, but together they calculated higher rates of pay on a calculator tape and that Atos left Okpik's office with the tape. Okpik claims she does not know who wrote the higher hourly rate on the mayor's personnel form, but admits she knew Olemaun was receiving the higher hourly pay and that she did not report the overpayment while she was an employee of Barrow.

Olemaun claims that he asked to be paid what the previous mayor had been paid, that he discovered he was being overpaid in the fall of 2004 and that he asked Okpik to correct the problem but she did not do so. He denies that he wrote the incorrect hourly rate on his personnel action form, but admits he otherwise filled out the form and signed it.

In February 2005 Olemaun hired a special assistant, Deborah Lyn, and assigned her to work with Okpik on the budget. According to Lyn, Olemaun informed her several weeks after she was hired that he believed his pay was being calculated incorrectly and that Okpik had told him she would fix it. When Lyn conducted a "personnel file audit" several months later, she discovered Olemaun was still being overpaid. For reasons unclear in the record, Olemaun's salary was still incorrect in early April 2005. On April 6, 2005, Lyn personally created a new personnel form for Olemaun with the correct salary, effective April 1.

On April 14, Olemaun told Okpik she was still in acting status, that he intended to advertise the finance director position, that he wanted her to remain in the position until a new director was hired, and that she would then be "Accountant, Senior." Olemaun cited the budget problems that had developed during Okpik's nearly eight-year tenure as finance director as reason for his decision. He also stated he believed the city "would benefit from a finance director with more training, better qualifications[,] and more experience."

---

1. The dismissal of the emotional distress claims was not appealed.

The next day, Okpik submitted a resignation letter that was effective April 22. She disputed Olemaun's claim that she was not qualified, indicated she would not train the new finance director as he had requested, and said "I cannot work under these circumstances."

Lyn was appointed "acting finance director" on April 28, 2005. She discovered Olemaun's salary had still not been corrected because the form she created on April 6 had apparently been lost. Lyn created a second, correct personnel form, effective April 1. Olemaun signed it on April 29.

In May 2005, after Olemaun's pay had been corrected and after Okpik had resigned, Okpik met with a city council member and revealed that Olemaun had been overpaid since October 2004. On May 25, 2005, Lyn circulated a memorandum to city council members discussing the personnel audit results. She explained that Olemaun had been overpaid from October 2004 until the end of March 2005. The memorandum blamed Okpik for not correcting Olemaun's rate of pay and suggested that if an independent legal advisor could find that Okpik was entirely responsible for the incorrect hourly pay Olemaun had received, repayment would be unnecessary. The memorandum also identified several accounting problems, including budget miscoding errors, depleted reserve accounts, and failure to include grants in the budget.

Barrow hired outside counsel to investigate the mayor's overpayment in late May 2005. The investigator found Olemaun had been overpaid nearly $20,000 and recommended that he be required to reimburse Barrow. The investigator could not determine conclusively who was responsible for the salary error but found that Olemaun was the official responsible for the final approval of the personnel action form that led to his overpayment.

### B. Proceedings

Okpik filed suit in April 2006. She asserted claims against Barrow under 42 U.S.C. § 1983 for violation of her due process rights, under Alaska's Whistleblower Act,[2] and also under the common law for wrongful termination (constructive discharge) and negligent and intentional infliction of emotional distress. Okpik alleged that Olemaun took retaliatory employment actions against her and threatened her because of her role in Olemaun's improper receipt of city funds.

Barrow moved for summary judgment on all of Okpik's claims. In March 2008 the court granted summary judgment for Barrow on Okpik's § 1983, whistleblower, and emotional distress claims. But the court denied summary judgment on Okpik's wrongful termination claim. It concluded a reasonable person in Okpik's position could have felt compelled to resign and that "a jury could find that Mayor Olemaun's actions breached the obligation [of good faith and fair dealing] owed [to Okpik]."

Barrow filed a motion for reconsideration on the issue of breach of the implied covenant of good faith and fair dealing. The court granted Barrow's motion and reversed its ruling on the breach of the implied covenant of good faith and fair dealing and granted summary judgment on Okpik's "wrongful discharge claim." The court stated that Barrow's adverse employment actions "were expressly permitted under [Okpik's] contract of employment" and, therefore, could not constitute a breach of the implied covenant.

Okpik moved for clarification, which Barrow opposed. The court issued a written clarification explaining that Okpik did not defeat Barrow's summary judgment motion because she did not present any evidence to support her retaliation theory; she merely asserted the existence of a conspiracy.

Okpik appeals the superior court's summary judgment order dismissing her § 1983 claim, her whistleblower claim, and her wrongful termination claim.

### III. STANDARD OF REVIEW

 We review a grant of summary judgment de novo, "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in [her]

2. AS 39.90.100–.150.

favor."[3] We will affirm a grant of summary judgment "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[4]

 "The party opposing summary judgment must set forth specific facts showing genuine issues and cannot rest on mere allegations."[5] These facts "must arise from admissible evidence."[6] "To determine whether the nonmoving party can produce admissible evidence creating a genuine factual dispute, we will consider the affidavits, depositions, admissions, answers to interrogatories and similar material."[7]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Granting Summary Judgment on Okpik's § 1983 Due Process Claim.

 Okpik argues the court erred in granting summary judgment for Barrow on the due process claim she raised under 42 U.S.C. § 1983 because she was not an at-will employee and therefore had a protected property interest in continued employment. The superior court agreed with Barrow that Okpik was an at-will employee who served "at the pleasure" of the mayor. It concluded Okpik had "no claim for deprivation of any right" under § 1983.

 "To sustain an action under 42 U.S.C. § 1983, [a claimant] must show: (1) that the conduct complained of was committed by a person acting under color of state law and (2) that the conduct deprived the plaintiff of a constitutional right."[8] Okpik claims she was deprived of her constitutionally protected property interest in continued employment. Property interests "are creat-

ed and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure benefits and that support claims of entitlement to those benefits."[9] Here, the "independent source" is the Barrow Code.

Section 3.41.010 of the Barrow Code distinguishes between two types of city employees: "classified service" and "confidential and/or managerial positions." The finance director position and the "acting" finance director position are "confidential and/or managerial positions."[10] Section 3.41.030, titled "Appointment; at-will employment," describes how persons in "confidential/managerial positions" are chosen. It provides:

> The mayor shall make appointments to all confidential/managerial positions except that the city clerk and the finance director shall be appointed and confirmed in accordance with Section 2.20.020 of the code.... Employees who hold confidential/managerial positions have an at-will employment relationship with the city. They serve at the pleasure of the mayor, and may be terminated with or without cause, for any reason or for no reason, by the mayor.[11]

Section 2.20.020 reinforces this scheme, stating, in part:

> B. The finance director shall be appointed by the mayor acting as the chief administrative officer of the city. Appointments by the mayor are subject to confirmation by the city council.
> C. Officers serve at the pleasure of the appointing authority.

Finally, Section 2.20.050, which defines the finance director's duties, states that the fi-

3. *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002)).

4. *Id.* (citing *Spindle*, 61 P.3d at 436).

5. *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 144 (Alaska 1991).

6. *Witt*, 75 P.3d at 1034 (internal citations omitted).

7. *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002) (internal citations omitted).

8. *Crawford v. Kemp*, 139 P.3d 1249, 1255 n. 10 (Alaska 2006).

9. *Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

10. Barrow Code (BC) 3.41.010(B)(3), (10) (2005).

11. BC 3.41.030 (2005).

nance director is "appointed by the mayor subject to council approval."

Under these code provisions, Okpik held a "confidential and/or managerial position" and served at the pleasure of the mayor.[12] "A public employee who serves at the pleasure of [her] employer can have no expectation of continued employment and therefore does not have a property interest in [her] job."[13] Because Okpik served at the pleasure of the mayor, she had no property interest in continued employment and thus no valid due process claim under § 1983.[14]

We affirm the superior court's grant of summary judgment for Barrow on Okpik's § 1983 claim.

## B. The Superior Court Did Not Err in Granting Summary Judgment on Okpik's Claim Under the Whistleblower Act.

■ Okpik argues the court erred in granting summary judgment on her Whistleblower Act[15] claim. She argues that the Whistleblower Act did not require her to report to a public body during her employment.

■ Alaska's Whistleblower Act "protects public employees who report to public bodies on matters of public concern from retaliation by their employers."[16] Alaska Statute 39.90.100 provides:

(a) A public employer may not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because

(1) the employee ... reports to a public body or is about to report to a public body a matter of public concern; or

(2) the employee participates in a court action, an investigation, a hearing, or an inquiry held by a public body on a matter of public concern.

■ To bring suit under the Whistleblower Act "an employee must show that (1) she has engaged in protected activity and (2) the activity was a 'substantial' or 'motivating' factor' in her termination."[17] Reporting a matter of public concern to a public body is "protected activity."[18] The superior court recognized that "to trigger application of the statute there must be a report" and concluded that because Okpik did not make a report while employed, her claim failed.[19]

Alaska Statute 39.90.100 only protects employees who "blow the whistle" during their employment. Okpik did not make a report, did not allege that she was about to make a

**12.** BC 3.41.030 (2005); 2.20.020 (1998); 2.20.050 (1998).

**13.** *Ramsey v. City of Sand Point*, 936 P.2d 126, 132 (Alaska 1997) (citing *Bishop v. Wood*, 426 U.S. 341, 344–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

**14.** Okpik's argument that BC 2.20.020 and BC 2.20.050 are conflicting and should be read as providing that she may not be discharged unless both the mayor and city council concur is both unconvincing and without precedent. We agree with the superior court that these provisions do not conflict and, read properly, they create no such limitation on the mayor's ability to remove appointed officers.

**15.** AS 39.90.100–.150.

**16.** *Hammond v. State, Dep't of Transp. & Pub. Facilities*, 107 P.3d 871, 874 n. 5 (Alaska 2005) (internal citations omitted).

**17.** *Id.* at 874 n. 5 (quoting *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 586 (Alaska 2001)).

**18.** *See id.*

**19.** The superior court also dismissed Okpik's argument that AS 39.90.110(c) exempts her from the Act's reporting requirement. This statute applies when an employer's personnel policy requires an employee to "report up" the internal chain of command before "blowing the whistle" and reporting outside the organization. *Cf. Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116, 1122 (Alaska 1997) ("The legislative history indicates only that the purpose of AS 39.90.110(c) was to give the employer an opportunity to correct any problems identified by the employee."). The statute exempts the employee from the requirement of reporting up the chain of command when the employer's supervisor is the wrongdoer. AS 39.90.110(c). The superior court correctly found that this provision did not apply to Okpik because Barrow's personnel policy had no "reporting up" requirement. We agree; nothing in this statute exempts Okpik from the requirement that she actually make a report in order to receive the protection of AS 39.90.100.

report when she was demoted, and did not participate in an investigation while employed. She testified that she knew Olemaun was being overpaid "from his first pay period," but she did not disclose this to anyone, except perhaps the bookkeeper (a subordinate), from the time she spoke with Olemaun and his administrative assistant in October 2004 until after her resignation on April 22, 2005. Okpik reported Olemaun's salary discrepancy to a city council member and participated in the investigation, but both of these events occurred one to two months after she resigned, when she no longer fell under the Act's protection.

Because Okpik failed to report or participate in an investigation until after she had already resigned, we affirm summary judgment for Barrow on Okpik's Whistleblower Act claim.

**C. It Was Error for the Superior Court To Grant Summary Judgment on Okpik's Claim for Wrongful Termination.**

 To prevail on a wrongful termination claim "an employee must prove: (1) that the employee was discharged by [his or her] employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination."[20] Constructive discharge satisfies the first element;[21] a breach of the implied covenant of good faith and fair dealing satisfies the second.[22]

 The superior court concluded that Okpik had presented sufficient evidence to survive summary judgment on the issue of constructive discharge because she could have felt compelled to resign after she was demoted. Barrow did not challenge this ruling in its motion for reconsideration, but it did challenge the denial of summary judgment on the issue of breach of the implied covenant of good faith and fair dealing. The superior court granted Barrow's motion for reconsideration and entered summary judgment in favor of Barrow on the issue of breach of the implied covenant. Okpik challenges this ruling on appeal.[23]

 "At-will employees may be terminated for any reason that does not violate the implied covenant of good faith and fair dealing."[24] An employer may breach the covenant objectively or subjectively.[25] "The objective prong of the covenant is breached when an employer fails to act in a manner that a reasonable person would consider fair, which includes treating similarly situated employees disparately, terminating employees on unconstitutional grounds, and terminating employees in violation of public policy."[26]

In support of her theory that Barrow objectively breached the covenant when Ole-

**20.** *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002) (citing *Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal.App.4th 33, 105 Cal. Rptr.2d 525, 530 (2001)).

**21.** *City of Fairbanks v. Rice*, 20 P.3d 1097, 1102 n. 7 (Alaska 2000).

**22.** *See Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999) ("Employees hired on an at-will basis can be fired for any reason that does not violate the implied covenant of good faith and fair dealing.").

**23.** Barrow argues on appeal that Okpik was not constructively discharged, but Barrow did not file a cross-appeal on this issue. At oral argument before our court, Barrow took the position that the superior court reversed itself on both prongs of the wrongful termination analysis. Our review of the record convinces us that the only issue before the superior court on reconsideration was the breach of implied covenant; the superior court reversed its previous ruling deny-

ing summary judgment on that ground alone. In the absence of a cross-appeal by Barrow, we cannot consider the issue of constructive discharge. *See Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004) ("[F]ailure to file a cross-appeal waives the right to contest rulings below.").

**24.** *Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 789 (Alaska 2002) (citing *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1131 (Alaska 1989)).

**25.** *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003). Okpik did not address the issue of subjective breach before the superior court, and makes only one passing reference in her brief on appeal; therefore, we address only the issue of objective breach. *See Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) ("Ordinarily, a party seeking to raise an issue on appeal must have raised it ... in the trial court.").

**26.** *Witt*, 75 P.3d at 1034 (citing *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002)).

maun demoted her, Okpik argues that she presented sufficient evidence from which a reasonable jury could conclude that Olemaun improperly received city funds and demoted her to cover up actions he took to increase his own pay, thereby violating public policy.[27] Barrow disputes this argument and claims Okpik was replaced and reassigned based on legitimate business considerations. It argues that she did not produce sufficient admissible evidence to show a connection between the improper payments Olemaun received and his decision to demote her, or that Barrow treated her objectively unfairly.

To defeat the summary judgment motion, Okpik needed to present sufficient evidence from which a reasonable jury could infer a nexus between the improper payments and her demotion, thereby showing a violation of public policy and a breach of the covenant. Demonstrating Olemaun's improper receipt of city funds—without a nexus to the employment action—is insufficient by itself.

To support her theory that the demotion and Olemaun's improper payments were connected, Okpik argued that: (1) the April 14 meeting, in which Olemaun told Okpik he intended to replace and reassign her, "occurred within days" of April 6, when Lyn gave him the first corrected personnel form; (2) Olemaun "did not sign the corrective personnel action notice until after Okpik's resignation and upon the presentation of a second notice"; (3) "Okpik had no authority over personnel matters"; (4) Olemaun "had exclusive control over personnel action notices" because he was the personnel director; (5) Olemaun "knew about the overpayment for [six] months and took no corrective actions on his own volition"; (6) Olemaun and Lyn "drafted a confidential memo to the [c]ouncil blaming Okpik for the error"; and (7) "Okpik competently performed her job as [f]inance [d]irector for many years prior to Mayor Olemaun's election and the alleged reason for Okpik'[s] demotion in April[ ] 2005—lack of qualifications—was pretextual."

The mere fact that Olemaun signed the second corrected personnel form after Okpik resigned does not establish a causal link between the improper payments and her demotion.[28] It is also unclear what Okpik means to show by stating Olemaun knew he was overpaid since October 2004 and did not correct it.[29] Similarly, the temporal proximity between Olemaun receiving a corrected personnel form from Lyn and Olemaun informing Okpik that he intended to replace her does not by itself create an inference of a connection between the two events. But we conclude the remaining pieces of evidence, taken together and construed in Okpik's favor, support her argument that she has met her evidentiary burden for purposes of surviving summary judgment.

 Okpik was required to present admissible evidence to rebut Barrow's justifications for its employment action if her claim for breach of the implied covenant was to survive summary judgment.[30] "It is well established that the evidentiary threshold necessary to preclude an entry of summary judgment is low," including in employment

**27.** We focus on Okpik's demotion because the record does not support the conclusion that placing her on acting status or giving Lyn budget preparation duties were adverse employment actions taken in retaliation for Okpik's knowledge of the salary problem. Two other employees were placed on acting status at the same time as Okpik in 2004, and Okpik remained satisfied with her job even after Lyn gained budget preparation duties.

**28.** The undisputed evidence shows Olemaun told Okpik he intended to replace and reassign her on April 14, and that he signed the personnel action form returning his rate of pay to the authorized level on April 29. It is unclear how signing the personnel form after Okpik resigned could raise the inference that Olemaun decided to demote

her to blame her for receiving excessive pay. Okpik does not explain what she believes this evidence shows.

**29.** The undisputed evidence is that Olemaun knew by his first or second paycheck he was getting overpaid. The parties dispute whether he acted to fix it. But this dispute is not material. Even assuming Olemaun did nothing to fix the salary problem between October 2004 and March 2005, this evidence still does not raise the inference that he decided to replace and reassign Okpik because of the improper payments he received.

**30.** *See French v. Jadon, Inc.*, 911 P.2d 20, 24–25 (Alaska 1996).

cases.[31] And "generally whether the covenant has been breached is a question for the trier of fact."[32]

Barrow argued that Okpik's inadequate performance of her duties as finance director, which included overseeing payroll, constituted a legitimate reason for replacing her. Specifically, Olemaun stated he decided to replace and reassign Okpik because of "budget problems created under her watch," and that he "concluded that the [c]ity would benefit from having a [f]inance [d]irector with more training, better qualifications and more experience." Barrow also appears to blame Okpik for Olemaun's six months of overpayment.

On the first issue—that Okpik was unqualified or incapable of performing her job— Okpik presented admissible evidence to rebut Barrow's justification for replacing and reassigning her: positive job evaluations in 1996, 1999, and 2000. Her relevant job evaluations, which rank her work as "very good" or "outstanding" on all rating criteria, create a disputed question of fact about whether Okpik had the necessary competency for the position. On the second issue—that Okpik was to blame for the six months of overpayment—Okpik argues that she had no authority to correct Olemaun's pay because he had sole authority over personnel matters. To support this assertion, she points to Olemaun's testimony that under the Barrow Code, the mayor is the personnel director, and the personnel director is the one with final responsibility to sign personnel action forms.[33] Although Olemaun testified that only the finance director would know what the salary should be for a particular employee, this evidence creates a disputed question of fact about whether Olemaun improperly blamed Okpik for the change in his salary. A fact finder could decide that this evidence shows that the alleged reasons for Okpik's demotion were pretextual and that she was actually demoted for an improper reason.

Barrow's reliance on *French v. Jadon, Inc.*[34] and *Witt v. State, Department of Corrections*[35] is misplaced. Unlike the employees in *French* and *Witt*, Okpik has presented at least some admissible evidence in support of her claim separate from her own allegations: Olemaun's deposition testimony, Lyn's memorandum, and three positive job evaluations. Taken together, this evidence creates an issue of material fact about whether Barrow objectively breached the covenant of good faith and fair dealing.

Because Okpik presented sufficient admissible evidence tending to show a genuine issue of material fact about whether Barrow demoted her for an improper reason, and because she presented admissible evidence to rebut some of Barrow's reasons for demoting her, she satisfied her evidentiary burden to survive summary judgment on the issue of breach of the covenant of good faith and fair dealing.

## V. CONCLUSION

We AFFIRM summary judgment for Barrow on Okpik's claims under 42 U.S.C. § 1983 and the Whistleblower Act. We REVERSE summary judgment for Barrow on

---

31. *Hammond v. State, Dep't of Transp. & Pub. Facilities,* 107 P.3d 871, 881 (Alaska 2005) (internal citations omitted) (reversing summary judgment for employer where employee "presented sufficient evidence that his firing was retaliatory to meet the low summary judgment threshold"); *see also Cameron v. Beard,* 864 P.2d 538, 548 (Alaska 1993) ("Although recognizing some of [the employee's] allegations are pure speculation, we conclude that there is sufficient evidence in the record to support the jury verdict on [the issue of constructive discharge].").

32. *Witt,* 75 P.3d at 1034 (citing *Holland v. Union Oil Co. of Cal.,* 993 P.2d 1026, 1032–33 (Alaska 1999)). *But see Holland,* 993 P.2d at 1032–33 (clarifying this court has "not held ... that [it]

could never conclude that as a matter of law an employer did not breach the implied covenant of good faith and fair dealing when [the employer] demoted an employee"); *see also Pitka v. Interior Reg'l Hous. Auth.,* 54 P.3d 785, 789 (Alaska 2002) (concluding employer did not breach the implied covenant as a matter of law).

33. The independent investigator similarly recognized that Olemaun was "the official responsible for the final approval of the personnel action form that led to his overpayment."

34. 911 P.2d 20 (Alaska 1996).

35. 75 P.3d 1030 (Alaska 2003).

the claim of wrongful termination and RE-MAND for further proceedings.

EASTAUGH and FABE, Justices, not participating.