**ERA AVIATION, INC., Petitioner,**

v.

**Jerilue SEEKINS, Respondent.**

**No. S–8129.**

Supreme Court of Alaska.

Feb. 26, 1999.

————————

Thomas M. Daniel and Helena L. Hall, Perkins Coie, Anchorage, for Petitioner.

Howard A. Lazar and Elise M. Hsieh, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Respondent.

Before MATTHEWS, Chief Justice, and COMPTON, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Era Aviation, Inc., fired Jerilue Seekins. Seekins sued Era for breach of the covenant of good faith and fair dealing, alleging that, despite the "at-will" termination clause in her employment contract, the covenant allowed Era to fire her only for good cause. After the superior court denied Era's motion for summary judgment, we granted its petition for review. Because we conclude that the record fails to support Seekins's breach of covenant claim, we conclude that Era is entitled to judgment as a matter of law.

### II. FACTS AND PROCEEDINGS

In the spring of 1993, Jerilue Seekins approached Dianne Smith, the Kenai station manager for Era Aviation, Inc., about the possibility of obtaining a job with Era. Seekins was living in Seattle, but was interested in relocating so that she and Michael Hopley, a friend who ran a fishing guide business based in Soldotna, could be together. In Seattle, Seekins was employed by Alaska Airlines; she had worked for the airline since 1992 and wanted to continue working in this field. At their initial meeting, Smith told Seekins that Era had openings only for temporary summer jobs, in which Seekins was not interested. Smith told Seekins to remain in touch regarding employment with Era.

In the spring of 1994, after Seekins had spoken with Smith several more times, Smith offered Seekins a job with Era as a customer service ticket agent in Kenai. Seekins accepted the job and moved to Kenai. Before Seekins started working for Era, she signed a pre-printed form, entitled "Company Policies," indicating that she understood that "employment at Era Aviation, Inc.[,] is 'at will', which means that either I or the Company can terminate the employment relationship at any time, with or without prior notice, and for any reason not prohibited by law."

Seekins began working for Era on June 13, 1994. In early August 1994, Mona Sim, Seekins's supervisor, met with Seekins and criticized her job performance: Sim claimed that Seekins had a challenging attitude, was too slow checking in customers, had improperly solicited clients for Hopley's fishing guide business, and had requested too much time off. On August 18, Sim and Smith met with Seekins. After informing Seekins that her job performance had not improved, Smith offered Seekins a choice between resigning and being fired. Seekins chose to be fired.

Seekins later sued Era, alleging that she had performed her job appropriately and was fired merely "as the result of a personality conflict." Seekins claimed that Era violated the covenant of good faith and fair dealing by discharging her without good cause.

Era moved for summary judgment. The superior court denied its motion, concluding that Seekins's breach of covenant claim raised triable issues of fact under *ARCO Alaska, Inc. v. Akers.*[1] Soon after the trial court denied Era's summary judgment motion, this court decided *Ramsey v. City of Sand Point,*[2] affirming an award of summary judgment against an at-will employee who claimed that a discharge without cause violated the implied covenant.[3] Era moved for reconsideration based on *Ramsey*; again, the court denied its motion. Era petitioned for review. We granted the petition.

### III. DISCUSSION

#### A. Standard of Review

We review a denial of summary judgment

---

1. 753 P.2d 1150 (Alaska 1988).

2. 936 P.2d 126 (Alaska 1997).

3. *Id.* at 133.

de novo.[4] We draw all reasonable inferences in favor of the nonmoving party, and affirm a denial of summary judgment if there is a genuine issue of material fact or if it is clear that the moving party is not entitled to judgment as a matter of law.[5]

B. *Evidence that Era Terminated Seekins's At–Will Employment Without Good Cause Does Not Raise Triable Issues on Seekins's Breach of Covenant Claim.*

1. *This court's implied covenant cases*

Our cases have distinguished between at-will and for-cause employment based on the level of cause needed to terminate the employment relationship:

> Employees hired on an at-will basis can be fired for any reason that does not violate the implied covenant of good faith and fair dealing. However, employees hired for a specific term may not be discharged before the expiration of the term except for good cause.[6]

This court has also recognized that every contract is subject to an implied covenant of good faith and fair dealing.[7] In the employment contract context, the covenant operates as a check on employers' traditional freedom to terminate at-will employment for any reason; we have held that an employer may not terminate an at-will employee for reasons antithetical to the implied covenant.[8]

■ We first applied the covenant to an at-will employment contract in *Mitford v. de Lasala.*[9] There, Mitford alleged that de Lasala had fired him to prevent him from receiving his share of business profits; we found that to be a viable claim for breach of the covenant of good faith and fair dealing.[10] We observed that the covenant "would prohibit firing Mitford for the purpose of preventing him from sharing in future profits.... The circumstances surrounding Mitford's termination give rise to an inference that he was fired for that reason."[11] *Mitford* thus stands for the proposition that the covenant prohibits an employer from exercising at-will powers of discharge to unfairly deprive an employee of a benefit contemplated by the employment contract.[12]

In *Luedtke I,* this court recognized that the covenant can be breached when the firing of an employee occurs in violation of a specific public policy.[13] We found that unwarranted intrusions into employee privacy violate public policy,[14] and so concluded that the covenant could be violated by terminating an employee for resisting an improperly noticed drug test.[15]

In *Luedtke II,* an appeal after remand in *Luedtke I,* we further explained that a breach of the covenant can be either subjective or objective[16]—that an employer can violate the covenant either by acting with a subjectively improper motive or by failing to "act in a manner which a reasonable person would regard as fair."[17] As examples of subjective breaches, we cited cases like *Mitford.*[18] As examples of objective breaches,

---

**4.** *See Western Pioneer, Inc. v. Harbor Enters., Inc.,* 818 P.2d 654, 656 n. 3 (Alaska 1991).

**5.** *See id.*

**6.** *Luedtke v. Nabors Alaska Drilling, Inc.* (*Luedtke I* ), 768 P.2d 1123, 1130–31 (Alaska 1989) (footnote omitted). *See also Eales v. Tanana Valley Medical–Surgical Group, Inc.,* 663 P.2d 958, 959 (Alaska 1983).

**7.** *See Guin v. Ha,* 591 P.2d 1281, 1291 (Alaska 1979).

**8.** *See French v. Jadon, Inc.,* 911 P.2d 20, 24 (Alaska 1996).

**9.** 666 P.2d 1000 (Alaska 1983).

**10.** *Id.* at 1007.

**11.** *Id.*

**12.** *See id.*

**13.** *Luedtke I,* 768 P.2d at 1130.

**14.** *See id.*

**15.** *See id.; see also Luedtke v. Nabors Alaska Drilling, Inc.* (*Luedtke II* ), 834 P.2d 1220, 1224–25 (Alaska 1992).

**16.** *Luedtke II,* 834 P.2d at 1224–25.

**17.** *Id.* at 1224.

**18.** *See id.* (also citing *Jones v. Central Peninsula Gen. Hosp.,* 779 P.2d 783 (Alaska 1989), and *Hagans, Brown & Gibbs v. First Nat'l Bank of Anchorage,* 783 P.2d 1164 (Alaska 1989)).

we cited cases involving disparate employee treatment, terminations on grounds that were found unconstitutional, and firings that violated public policy.[19] We clarified that *Luedtke I* involved an act of objective unfairness.[20]

Recently, in elaborating on the covenant's facets in *Ramsey v. City of Sand Point*, we reiterated that "[t]he covenant has both subjective and objective elements"; [21] we again cited *Mitford* to illustrate a subjective bad faith breach [22] and cited *Luedtke II* to illustrate the covenant's objective aspect.[23]

### 2. The parties' positions

Era contends that, in firing Seekins, it merely exercised its express contractual right to terminate her at will. It argues that our cases establish that we will invoke the implied covenant of good faith and fair dealing to preclude an employer from terminating an at-will employee only when the employer has acted to unfairly deprive the employee of the economic benefits of a contract—as occurred in *Mitford*—or when the employer has acted in violation of public policy—as happened in *Luedtke I* and *Luedtke II*. Era argues that Seekins's claim, which alleges a personality-based discharge, falls into neither category.

Seekins responds that the covenant is not limited to the two circumstances that Era identifies, but instead imposes a general requirement upon employers to act reasonably and fairly. She does not directly contend that the at-will clause in her employment contract was invalid; nor does she assert that she was a for-cause employee. Rather, tacitly conceding that she was an at-will employee, Seekins claims that the circumstances surrounding her at-will employment led her to form a reasonable expectation that, despite the at-will clause in her contract, Era would actually discharge her only for poor job performance. Seekins contends that, because she subjectively held this expectation,

and because the expectation itself was objectively reasonable, both the objective and subjective requirements of the covenant are met, and Era should be barred from firing her without good cause.

Pointing to evidence that could be construed as showing that she was discharged as a result of a personality conflict rather than for poor job performance, Seekins insists that she has made a prima facie showing that Era breached the covenant. Seekins summarizes her position as follows:

> The covenant of good faith and fair dealing means what it says: employers must act in *good faith* and *deal fairly with employees*. Era did not act in good faith towards Ms. Seekins and Era did not deal fairly in terminating her based upon a disgruntled supervisor's unsupported complaints and misrepresentations. The facts clearly illustrate Era's breach, and thus the Superior Court was justified in denying Era's assertions that they need not treat an at-will employee fairly and their attendant request for summary judgment.

### 3. Applying our case law to Seekins's claim

We disagree with the broad view of the implied covenant that Seekins proposes, and we conclude that even when viewed in the light most favorable to Seekins, the record fails to support her breach of covenant claim. According to Seekins, Era knew that she left full-time employment with Alaska Airlines in Washington to take a job with Era in Alaska; Era also knew that she would not have done so had Era not offered her a position in Kenai comparable to the one she left in Seattle. Although she entered into an at-will contract, Seekins remained under the impression that her employment would continue unless she failed to perform her job adequately. Once hired, Seekins received little training or guidance. She soon had a per-

**19.** *See Luedtke II*, 834 P.2d at 1224 (citing *Jones; Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050 (Alaska 1986); *State v. Haley*, 687 P.2d 305 (Alaska 1984); *Luedtke I* ).

**20.** *See Luedtke II*, 834 P.2d at 1224–25.

**21.** *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).

**22.** *See id.*

**23.** *See id.*

sonality conflict with her supervisor, Mona Sim; Sim met with Seekins once and complained without justification about her job performance. About two weeks later, Seekins's supervisor, Smith, met with Sim and Seekins. Smith informed Seekins—again without basis—that her job performance had not improved. Smith offered Seekins the option of resigning or being fired. Seekins decided not to resign, and Smith fired her with no further opportunity to improve her job performance. Although the stated reason for the firing was inadequate job performance, the true reason, alleges Seekins, was Sim's personality clash with her.

Even if proved, these facts would be legally insufficient to warrant a finding that Era breached the implied covenant of good faith and fair dealing. Reduced to its essence, Seekins's theory is that—despite her awareness of a valid at-will clause in her contract of employment—the covenant converted her at-will job into a good-cause contract because she reasonably expected that Era would fire her only in the event of poor job performance.

 This theory is flawed with respect to both the objective and subjective aspects of the covenant. It is flawed as to the objective facet of the covenant, because—as we recently held in *Ramsey*—the covenant is implied to effectuate, not to alter, the reasonable expectations of the parties; hence, "[it] cannot be interpreted to prohibit what is expressly permitted by [the] contract...." [24] Because recognizing and enforcing Seekins's unilateral expectation of a good-cause employment relationship would alter the basic character of her at-will employment agreement by "prohibit[ing] what is expressly per-

mitted," [25] the expectation is unreasonable as a matter of law.

 Seekins's theory is also flawed as to the subjective aspect of the implied covenant. The subjective element focuses not—as Seekins implicitly posits—on the employee's personal feelings of unfairness, but rather on the employer's motives, requiring proof that the employer's decision to fire was actually made in bad faith.[26] To be subjectively unfair, the employer's conduct must actually be motivated by an improper or impermissible objective: "An employer engages in subjective bad faith when it discharges an employee for the purpose of depriving him or her of one of the benefits of the contract." [27] Hence, in the at-will employment context, it is insufficient to show that an employee was discharged for reasons unrelated to job performance; instead, the employee must show a purpose that is, in itself, improper or impermissible.[28]

 Given the at-will nature of Era's employment contract with Seekins, we cannot say that the company's alleged desire to avoid a personality conflict between two of its employees would, if proved, amount to an impermissible motive for firing Seekins.[29] The trial court thus construed *ARCO Alaska, Inc. v. Akers* [30] too broadly. Despite language in *Akers* generally suggesting that a discharge based on a non-work-related "personality conflict" could amount to a breach of the good faith covenant,[31] a close reading of our opinion indicates that the case is inapposite here.

Although *Akers* was initially hired as an at-will employee, he was issued an ARCO personnel handbook that entitled him to progressive discipline prior to termination and to written notice of ARCO's reasons for ter-

---

24. *Id.*

25. *Id.*

26. *Id.; see also Luedtke II*, 834 P.2d at 1224.

27. *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).

28. *See, e.g., Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983).

29. *Cf. E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 444 (Del.1996) (holding that, be-

cause "[e]mployees and their supervisors work closely together and personality clashes have the potential to interfere seriously with the achievement of an organization's mission[,] [d]islike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of an at-will employment").

30. 753 P.2d 1150 (Alaska 1988).

31. *Id.* at 1155.

minating him.[32] ARCO acknowledged, moreover, that it violated its own personnel policies in discharging Akers.[33] Given these facts, we proceeded on the assumption that ARCO was required to have good cause for termination. And, twice, relying on the procedural posture of the case, we specifically avoided examining the validity of this assumption.[34]

In summary, the evidence offered by Seekins, viewed in the light most favorable to her, would prove neither an objective nor subjective violation of the implied covenant of good faith and fair dealing. Because "[Seekins's] employment contract authorized [Era] to terminate [her] for any reason whatsoever," [35] we hold here, as we did in *Ramsey*, that, "[a]s a matter of law, a jury could not find [that Era's] termination . . . violated the implied covenant." [36]

## IV. CONCLUSION

Because we conclude that there are no genuine issues of material fact as to whether Era breached the covenant, and that Era was entitled to judgment as a matter of law, we REVERSE the superior court's order denying Era's motion for summary judgment.

EASTAUGH and FABE, Justices, not participating.

---

**32.** *Id.* at 1151, 1155.

**33.** *Id.* at 1155.

**34.** *See id.* (finding that, given Akers's prima facie showing that his termination was without good cause, it was unnecessary to determine whether ARCO bore the burden of proof on this issue), and *id.* at 1157 (finding, in the absence of a timely objection by ARCO, no plain error in a

jury instruction that failed to differentiate between, and therefore implicitly equated, good faith for purposes of the implied covenant and good cause for purposes of termination).

**35.** *Id.*

**36.** *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).