Jeanette PITKA, Appellant,

v.

**INTERIOR REGIONAL HOUSING
AUTHORITY, Appellee.**

No. S–10152.

Supreme Court of Alaska.

Sept. 13, 2002.

James M. Hackett, Law Offices of James M. Hackett, Inc., Fairbanks, for Appellant.

Tracey L. Knutson, Sisson & Knutson, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Jeanette Pitka was dissatisfied with her conditions of employment and the results of the grievance she filed with her employer, the Interior Regional Housing Authority. She left work and never returned. Pitka sued her employer, alleging breach of the implied covenant of good faith and fair dealing, breach of employment contract, and constructive termination. The superior court granted summary judgment in the employer's favor on all claims. We affirm.

## II. FACTS AND PROCEEDINGS

The Interior Regional Housing Authority (IRHA) hired Jeanette Pitka as a temporary accounting assistant in January 1997. Pitka's position later became permanent and she was given the title of Projects Administrative Clerk. In February 1998 her supervisor, Rose Baumes, conducted an annual job performance review and concluded that Pitka's overall performance was "above satisfac-

tory." Pitka received a step increase to Grade 2 and a salary increase to $24,768 per year. In January 1999 Baumes conducted another annual review for Pitka, this time rating her job performance as "satisfactory." Pitka received another step increase to Grade 3 and a salary increase to $27,964 per year.

In August 1999 Pitka filed a written grievance with IRHA's executive director, Joseph Wilson, and its personnel director, Gretchen Ray. Pitka claimed that another department was "spontaneously taking over [her] job duties," and that her supervisor, Baumes, was "jumping into her work and taking over her duties." Pitka argued that her job duties should "remain [her] responsibility until formal action is taken." Shortly thereafter, Pitka sent another memorandum to Wilson and Ray, informing them that she would "not return to work until issues can be resolved in a professional manner." She added that she "expect[ed] to be compensated financially for any time missed." The following day, Wilson informed Pitka that an employee is not permitted to "unilaterally remove oneself from work and continue to be compensated, even if a grievance has been lodged." He also apprised her of the grievance procedures and asked her to schedule a hearing with Ray. Despite this warning, Pitka failed to return to work.

On August 19, 1999, Wilson issued a written decision on Pitka's grievance. He detailed the investigation of Pitka's various complaints and concluded that her job title would be changed to Administrative Clerk II, that she would split her time between two departments remaining under the same supervisor, that she would receive a written job description, and that her wage and step level would "remain the same." The decision also noted that Pitka had a "poor attitude," and that others found it difficult to work with her given her "tendency to complain" and her resistance to "performing tasks as directed."

Finally, the decision provided that if Pitka was dissatisfied with Wilson's decision, she could submit a final written grievance to the IRHA Board of Commissioners.

Pitka reviewed Wilson's decision, but refused to sign it. Pitka claimed that she had been demoted because a written job description contained in her file classified her position as a Grade 4. Wilson's grievance decision, however, reflected that Pitka would "remain the same" in a Grade 3 position.[1] Pitka never signed the written decision, yet she did not file an appeal of her grievance to the IRHA Board of Commissioners. Pitka never returned to work at IRHA.

On December 5, 1999, Pitka filed a complaint in the superior court for breach of the implied covenant of good faith and fair dealing, breach of employment contract, and constructive termination. In essence, she claimed that although she had prevailed in her grievance, IRHA had demoted her from a Grade 4 to a Grade 3 position, which constituted a violation of the employment contract. She also set forth a claim for wrongful discharge based on her allegation that her working conditions were so intolerable she felt compelled to resign. The parties filed cross-motions for summary judgment. On February 6, 2001, the trial court granted summary judgment to IRHA on all claims.

## III. STANDARD OF REVIEW

■ We review a grant of summary judgment de novo and view the facts in the light most favorable to the non-moving party.[2] When reviewing a grant of summary judgment, we determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law.[3] Summary judgment may be affirmed on grounds other than those relied upon by the superior court.[4]

---

1. The discrepancy appears to be explained by the fact that the job description placed in Pitka's file was for her supervisor's position, and had served only as a model for composing a new job description for Pitka. Pitka was apparently never paid as a Grade 4 employee.

2. *Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026, 1029 (Alaska 1999).

3. *Id.*

4. *Hernandez v. Lambert*, 951 P.2d 436, 439 n. 5 (Alaska 1998).

## IV. DISCUSSION

### A. Claims Not Raised in the Trial Court Will Not Be Considered.

 In general, "parties cannot advance new theories or raise new issues in order to secure a reversal of the lower court's determination."[5] However, we take a "liberal approach towards determining whether an issue or theory of a case was raised in a lower court proceeding."[6] In order to determine whether the "new" arguments will be considered here, we ask whether they were raised expressly below and, if not, whether they are closely related to the trial court arguments and could have been gleaned from the pleadings.[7] We will not consider a new argument if the issue is dependent on any new or controverted facts.[8]

IRHA contends that Pitka raises new issues on appeal that were not before the trial court and are therefore not properly before this court. It asserts that Pitka's claims below all flowed from her allegation that she "had prevailed in her grievance, yet when she returned to work, IRHA unilaterally altered the terms of her employment and demoted her." IRHA asserts that Pitka's claims focused entirely on the perceived demotion and constructive termination. In contrast, according to IRHA, Pitka now argues that she suffered numerous procedural violations of approximately thirteen different personnel policies.[9] Thus, IRHA contends that most of Pitka's current claims are not properly before this court. We agree.

It is clear that the arguments Pitka employed in the superior court are different than those set forth in this appeal. In her reply to IRHA's opposition to the motion for summary judgment, Pitka framed her claim this way: "The problem is that IRHA reneged on its commitment made in its grievance decision." Pitka focused her arguments exclusively on the claim that although she

"'prevailed' in her grievance, IRHA's ultimate response was to demote her," and she repeatedly emphasized that "the actions of IRHA did not comply with the grievance decision." Pitka's allegations in the superior court relied on a single set of facts which she characterized as "unrefuted":

● IRHA reorganized its offices and failed to advise Ms. Pitka as to the identity of her supervisor, job duties and job title;

● Ms. Pitka's personnel file contained a job description, inserted into her personnel file without her knowledge, which set her wage at grade 4;

● Ms. Pitka filed a grievance, learned of the job description in her file, and prevailed in the grievance. As part of the grievance decision, IRHA identified her supervisor and assured her that they would provide her with a job description, containing her job duties and maintain her wage grade and step level.

● Upon reporting to learn her new job description, Ms. Pitka was provided a job description with a wage grade of 3. She raised an objection to Ms. Ray about this, and was told to simply sign the grievance and that the matter was settled.

Thus, Pitka's sole focus was the alleged "demotion," and all of her claims flowed from that demotion. She claimed that the demotion constituted constructive discharge, that failure to implement the grievance decision constituted a breach of the implied covenant of good faith and fair dealing, and that violation of the personnel rule relating to grievances constituted a breach of the employment contract.

In contrast, Pitka now points to a broader range of personnel policies that she claims were not followed. In addition, she contends that all of the personnel policies, rather than just the grievance procedures, constitute an enforceable contract. Yet these claims were neither argued to nor briefed in the superior

---

5. *O'Neill Investigations, Inc. v. Illinois Employers Ins.*, 636 P.2d 1170, 1175 n. 7 (Alaska 1981).

6. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

7. *Id.; City of Hydaburg v. Hydaburg Coop. Ass'n*, 858 P.2d 1131, 1136 (Alaska 1993).

8. *Crum v. Stalnaker*, 936 P.2d 1254, 1257 n. 5 (Alaska 1997).

9. Pitka's claim of procedural error refers to thirteen specific personnel policies that Pitka claims were not followed.

court, and we therefore decline to consider them here.[10] Instead, our review is limited to the question actually presented to and considered by the trial court: whether Pitka was demoted despite prevailing in her grievance.

### B. IRHA Did Not Breach the Implied Covenant of Good Faith and Fair Dealing.

At-will employees may be terminated for any reason that does not violate the implied covenant of good faith and fair dealing.[11] "[E]very contract is subject to an implied covenant of good faith and fair dealing." [12] Breach of the implied covenant may be either subjective or objective.[13] An employer may violate the implied covenant by acting with a subjectively improper motive,[14] such as when it "discharges an employee for the purpose of depriving him or her of one of the benefits of the contract." [15] The subjective element is not based on the employee's personal feelings, but rather on the employer's motives.[16] Therefore, the employee must present proof that the employer's decision to terminate him or her "was actually made in bad faith." [17] An objective breach of the implied covenant may occur where the employer does not "act in a manner which a reasonable person would regard as fair." [18] Disparate employee treatment, terminations on unconstitutional grounds, and firings that violate public policy are examples of actions that may violate the objective aspect of the implied covenant.[19]

Although the trial court recognized that the question of whether an employer has breached the implied covenant of good faith and fair dealing is usually a question for the trier of fact, it concluded that Pitka had presented no evidence of IRHA's improper motives or of Pitka's demotion. Therefore, the superior court concluded as a matter of law that IRHA did not breach the implied covenant of good faith and fair dealing. It added that each of Pitka's concerns was addressed in the grievance decision, and that although she did lack a written job description as provided for in the personnel policy,[20] "this did not place her employment in jeopardy [and] could not possibly be considered unfair."

There is no evidence that IRHA violated the implied covenant of good faith and fair dealing. First, IRHA did not terminate Pitka. She was dissatisfied with the grievance process and simply refused to return to work. This occurred after she had used all of her sick days and had been granted an additional ten days leave. When Pitka filed her formal grievance, IRHA followed the procedures outlined in the policy, provided her with a hearing, and concluded by outlining a new position to accommodate her departmental preferences. Her pay remained the same. And although Pitka contends that she was demoted, there is no evidence to support the claim. Pitka relies on a written job description that she discovered in her personnel file. It described a position titled "Projects Assistant" that was a Grade 4 position. However, Pitka was a "Projects Administrative Clerk," which is a Grade 3 [21] and Pitka was never paid above Grade 3. Thus,

**10.** *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460–61 (Alaska 1991).

**11.** *Luedtke v. Nabors Alaska Drilling, Inc. (Luedtke I)*, 768 P.2d 1123, 1131 (Alaska 1989); *Era Aviation v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999).

**12.** *Era Aviation*, 973 P.2d at 1139.

**13.** *Id.*

**14.** *Id.*

**15.** *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997) (citing as example *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983), in which employer violated implied covenant for terminating employee in order to prevent him from receiving promised share of future profits).

**16.** *Era Aviation*, 973 P.2d at 1141.

**17.** *Id.*

**18.** *Ramsey*, 936 P.2d at 133.

**19.** *Era Aviation*, 973 P.2d at 1139–40.

**20.** The grievance decision required that Pitka be provided with a written job description.

**21.** After the grievance, Pitka's job title was changed to Administrative Clerk II and she remained at a Grade 3.

when Pitka was given her new position as Administrative Clerk II at Grade 3, that action could not be considered a demotion.[22]

With regard to the objective component, it is difficult to see how a reasonable person could regard IRHA's actions as unfair. On the contrary, the record seems to indicate that IRHA went out of its way to accommodate Pitka, even though other employees apparently found it difficult to work with her. The only procedural failure that can be gleaned from the record is the lack of a written job description for Pitka's position, and we agree with the trial court that this one oversight could not be considered a breach of the implied covenant of good faith and fair dealing.

### C. IRHA Did Not Wrongfully Terminate Pitka.

"Constructive discharge is not an independent cause of action, but merely satisfies the discharge element in a claim for wrongful discharge."[23] Constructive discharge is defined as "where an employer makes working conditions so intolerable that the employee is forced into an involuntary resignation."[24] In order to establish constructive discharge, "an employee has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign."[25]

Pitka claims that she was constructively discharged because her work conditions were so intolerable she had to resign. She claims that she was "humiliated" by the executive director's criticism that she was a "complainer," that the grievance decision was "incomplete, nonresponsive, and critical," and that she "could no longer work under [the executive director]." However, "criticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions" and the record

does not indicate that IRHA "engage[d] in a sustained campaign" against Pitka.[26]

The trial court found that there was no evidence of a campaign against Pitka or evidence of any effort to force her to resign. It observed that IRHA had gone through "a disorganized period during which Ms. Pitka felt upset," and aptly summarized that "she seemed to feel an almost proprietary right to continue to perform tasks she had developed herself." The trial court found that Pitka's fear that she might lose her job and her belief that she had been demoted were products of her own assumptions but that her subjective beliefs were not relevant.

With respect to her claim that she was humiliated by Wilson's remarks that she was a "complainer," even if she were profoundly affected by that isolated remark, criticism of job performance alone is not enough to create intolerable work conditions.[27] And Pitka has not pointed to any other comments or remarks that might be viewed as evidence of a campaign against her. Finally, it is difficult to see how the grievance decision itself could contribute to intolerable working conditions. In sum, the facts of this case are legally insufficient to establish a claim for wrongful discharge.

### V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's decision granting summary judgment in favor of IRHA.

---

22. Because there is no evidence that Pitka was actually demoted, we need not consider Pitka's claim that the demotion violated IRHA's grievance procedure and therefore the employment contract.

23. *City of Fairbanks v. Rice*, 20 P.3d 1097, 1102 n. 7 (Alaska 2000).

24. *Beard v. Baum*, 796 P.2d 1344, 1350 (Alaska 1990).

25. *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993).

26. *Id.*

27. *Id.*