James SMITH, Appellant,

v.

**ANCHORAGE SCHOOL DISTRICT,**
Appellee.

No. S–13285.

Supreme Court of Alaska.

Oct. 8, 2010.

---

Joe P. Josephson, Josephson & Associates, P.C., Anchorage, for Appellant.

Howard S. Trickey and Cheryl Mandala, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I.  INTRODUCTION

On October 29, 2004, the Anchorage School District terminated James Smith from his security position at Whaley Secondary School. Smith sued the School District, claiming: (1) race discrimination; (2) age discrimination; (3) disability discrimination; and (4) breach of the covenant of good faith and fair dealing. The superior court granted summary judgment in favor of the School District on all claims. We conclude that Smith did not present evidence raising genuine issues of material fact on any of his claims and that the School District was entitled to judgment as a matter of law on all claims. We therefore affirm the superior court's grant of summary judgment.

## II.  FACTS AND PROCEEDINGS

James Smith was a Mental Health Technician (MHT) at Whaley Secondary School, a school in the Anchorage School District for students with severe emotional disturbances and related behavioral problems. MHTs are safety and security personnel at Whaley and are trained and authorized to restrain students using the Mandt system of de-escalation and restraint. In order to use Mandt techniques, the School District requires MHTs to obtain certification and attend an annual three-day recertification training program.

### A.  Smith's Race Discrimination Complaint

On June 4, 2004, Smith and Todd Hess, the School District's Director of Contract Administration, met for a disciplinary conference. Hess held the disciplinary conference in order to address, among other things, complaints that Smith was making racially insensitive remarks. Smith is African–American.

During the conference, Smith expressed his belief that it was his coworkers who were acting in a racially inappropriate manner. Hess forwarded Smith's complaints to the School District's Equal Employment Opportunity Office (EEO) "[b]ecause Smith's allegations against his coworkers concerned possible racial harassment or discrimination." The EEO conducted an investigation and issued a report on November 12, 2004, concluding that there was "no evidence to support the allegation that coworkers made racial comments to [Smith]."

### B.  Smith's Absence From Whaley

Whaley held its annual Mandt training for returning MHTs on August 26, 27, and 30, 2004. Smith attended the first day of training, which was a Thursday. At the beginning of the day, Smith informed Whaley's principal that he intended to use personal time off for the next two training days (Friday August 27 and Monday August 30) in order to officiate at his niece's wedding in California. Smith explained that he had purchased his airline tickets for this travel in July. He was scheduled to fly out of Anchorage Thursday evening around 7 or 8 p.m. The principal told Smith that he could not take the personal days off because of the mandatory training. Later in the day, Smith informed the trainers that he was not feeling well. At lunch, Smith went to the Veteran's Administration Hospital to see a doctor, received a prescription for pain medication, and then went home.

Smith testified that he called in sick that evening for the next morning, Friday, August 27, because he was still in pain. Smith testified in a deposition that he stayed at

home that day with his son. He testified that he was feeling better by the afternoon so he decided to fly that night to California. He testified that he attended the wedding on August 28 and stayed with a relative through August 29. Upon his arrival in Anchorage sometime after midnight Monday, August 30, he realized that he was sick and could not work, so he called in sick. Thus, he did not attend the second and third Mandt training days.

## C. Ensuing Disciplinary Conferences

On September 8 Hess held a disciplinary conference with Smith to address "concerns related to [his] absence from work on August 27 and 30, 2004." Smith told his story, and Hess asked Smith to provide a copy of his boarding pass from his trip out of state to corroborate his story.

At the September 8 conference, Smith provided a physician's note stating that Smith was unable to walk more than 100 feet without resting, was unable to stand for longer than five or ten minutes, and may need crutches to aid in movement. Smith's MHT position required him to be in excellent health and specifically required him to be able to physically restrain students. Based on Smith's physician's note, Hess placed Smith on leave until he provided the School District with a fitness for duty statement from a physician indicating that he was medically able to perform the duties of his work position. Smith did not provide the requested information.

On September 13 Hess sent Smith a letter advising him that he had not provided the required travel documentation and giving Smith until September 17 to do so. The letter informed Smith that "[f]ailure to contact [Hess's] office [would] be viewed as insubordination." Smith still did not provide the requested information.

On September 20 Hess sent another letter notifying Smith that he had failed to provide the requested travel documentation and directing him to attend a discipline conference on September 28 to discuss his "insubordination."

On September 28 Hess and Smith met for the discipline conference, and Smith still did not provide the required travel documentation. Earlier in the week, Smith told Hess that it would take fourteen days to get documentation from the airline, so Hess set a deadline of October 15, 2004, for Smith to provide documents verifying the dates of Smith's travel. Hess also informed Smith that the School District intended to terminate his employment if he did not provide documentation.

During the conference, Smith produced another physician's note describing his hip injury. Smith's second physician's note stated that Smith's limitations were because of severe pain in his hip and that, "[e]ven with surgery correcting his pain, he [would] have life-long limitations" that would prevent him from "performing duties such as restraining others." According to Hess, Smith also stated at the conference that he was physically able and ready to return to work. Hess informed Smith that he would remain on leave until he provided a medical fitness for duty statement specifically addressing his ability to physically restrain students.

On October 7 Smith provided Hess with another physician's note. Smith's third physician's note stated that Smith had chronic hip pain limiting his ability to lift, bend, or squat. Hess informed Smith that this third note did not address his ability to restrain students, and thus Smith remained on leave.

Smith never provided the School District with documentation regarding his trip to California. On October 29 the School District terminated Smith for sick leave abuse, insubordination, and dishonesty. Smith was 53 years old when he was terminated and had worked for the School District for 19 years.

## D. Procedural History

On October 30, 2006, Smith filed a lawsuit against the School District alleging: (1) breach of the covenant of good faith and fair dealing; (2) age discrimination; (3) disability discrimination; and (4) race discrimination. The School District filed a motion for summary judgment on all claims, and on May 22, 2008, the superior court heard oral argument on the motion. The superior court issued a

ruling from the bench granting the School District's motion.

The superior court found that the School District did not fire Smith in bad faith, and granted summary judgment on his claim for breach of the covenant of good faith and fair dealing. The superior court also ruled that the School District's reasons for terminating Smith were an "adequate and independent basis for termination" that limited Smith to mixed-motive theories for wrongful termination on his discrimination claims. The court found that Smith had not presented the evidence of discrimination necessary for mixed-motive theories of race and age discrimination. The court granted summary judgment on Smith's race and age discrimination claims.

The superior court also found that there was "zero evidence" that Smith was fired because of his disability because the disability issues "hadn't yet played their way out in the system." It granted summary judgment on Smith's disability discrimination claim.

Smith appeals the superior court's grants of summary judgment on all claims.

## III. DISCUSSION

### A. Standard Of Review

■ "Grants of summary judgment are reviewed *de novo*, reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor as well." [1] When reviewing a grant of summary judgment, we "must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts." [2]

### B. Summary Judgment Was Proper On Smith's Race Discrimination Claim.

■ Smith argues that the superior court erred in granting summary judgment on his race discrimination claim against the School District. Smith argues that the "the close temporal relationship" between the June disciplinary conference when he raised concerns about racial comments by his coworkers and his termination in October raised a genuine issue of material fact whether race was a motivating factor in his termination. He also argues that the general circumstances under which the School District fired him raised a genuine issue of material fact whether race was a motivating factor in his termination.

Smith brings his race discrimination claim under the Alaska Human Rights Act, Alaska Statute 18.80.220(a).[3] We have previously adopted the federal "pretext" [4] and "mixed-motive" analytical frameworks used in Title VII [5] claims for analyzing race discrimination claims under Alaska's anti-discrimination laws.[6] Although plaintiffs can pursue mixed-

1. *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002)).

2. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992) (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985)).

3. AS 18.80.220(a)(1) states that it is unlawful for "an employer ... to discriminate against a person ... because of the person's race, ... age, [or] physical or mental disability." AS 18.80.220(a)(4) states that it is unlawful for "an employer ... to ... discriminate against a person because the person has opposed any [discriminatory] practices ... or because the person has filed a complaint ... under this chapter."

4. Under the United States Supreme Court's *McDonnell Douglas* burden-shifting pretextual framework, the employee carries "the initial burden ... of establishing a prima facie case of ... discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer "to articulate some legitimate, non-discriminatory reason" why the employee was discharged. *Id.* Finally, the burden shifts back to the employee to show that the employer's stated reason was pretextual. *Id.* at 804, 93 S.Ct. 1817. In doing so, the plaintiff's burden of proving pretext "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

5. 42 U.S.C. §§ 2000e–2000e–17 (2006).

6. *Era Aviation, Inc. v. Lindfors*, 17 P.3d 40, 43 (Alaska 2000) ("We look to decisions under Title VII in interpreting Alaska's anti-discrimination laws, and have ... endorsed the federal approach to analyzing claims of disparate treatment.") (internal citations omitted). *See also Haroldsen v. Omni Enter., Inc.*, 901 P.2d 426, 430–32 & n. 12 (Alaska 1995) (applying pretext analysis to race discrimination claim and acknowledging that AS 18.80.220 also bars termination where race is a motivating factor).

motive and pretext theories simultaneously,[7] Smith presents primarily a mixed-motive theory on appeal.

Under Alaska caselaw, a plaintiff must first present direct evidence of discriminatory intent in order to pursue a mixed-motive theory of discrimination under the Alaska Human Rights Act.[8] Once the plaintiff meets the threshold direct evidence requirement, he can prevail at trial by showing that his race was a "motivating factor" in the adverse employment decision.[9] In the mixed-motive context, the term "direct evidence" refers to the *quantum of proof*; it is not used as an antonym for "circumstantial evidence."[10] In order to show direct evidence the plaintiff must "at least offer either direct evidence of prohibited motivation or circumstantial evidence strong enough to be functionally equivalent to direct proof."[11]

We first adopted the "direct evidence" threshold requirement for mixed-motive discrimination claims in *VECO, Inc. v. Rosebrock*.[12] In doing so, we adopted, with little discussion, the "direct evidence" requirement from Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*.[13] Justice O'Connor agreed with the *Price Waterhouse* plurality that Title VII's prohibition of discrimination "because of" gender allowed the plaintiff to pursue a mixed-motive theory,[14] but she also would have required a plaintiff to "show by direct evidence that an illegiti-

mate criterion was a substantial factor in the decision."[15] We adopted the Justice O'Connor view because the Alaska Human Rights Act is modeled after, and is similar to, Title VII.[16]

In 2003 the Supreme Court in *Desert Palace v. Costa* eliminated the "direct evidence" requirement for mixed-motive cases under Title VII.[17] In *Desert Palace*, the Court was asked to address what was the correct standard for making a "direct evidence" determination in mixed-motive cases. The Court held that Congress's 1991 amendments to Title VII meant that a plaintiff did not need to make a heightened showing through direct evidence in order to receive a "mixed-motive" instruction.[18] At least one commentator has urged us to follow *Desert Palace* and abandon the direct evidence requirement.[19]

We decline to overrule our previous cases today and jettison the "direct evidence" requirement for mixed-motive claims of employment discrimination. Dropping the "direct evidence" requirement for mixed-motive claims of employment discrimination might reduce confusion about what qualifies as "direct evidence." *See id.* at 302–10, 109 S.Ct. 1775. But the Supreme Court's reasoning in *Desert Palace* was based on statutory language that is not found in AS 18.80.220. Specifically, Title VII was amended following *Price Waterhouse* by adding 42 U.S.C. § 2000e–2(m), which provides: "an unlawful

---

7. *Era Aviation,* 17 P.3d at 44.

8. *Id.*

9. *Kinzel v. Discovery Drilling, Inc.,* 93 P.3d 427, 434 (Alaska 2004) (quoting *Era Aviation,* 17 P.3d at 44). In contrast, plaintiffs pursuing a pretext theory of discrimination need not provide direct evidence. *Id.*

10. *Id.*

11. *Mahan v. Arctic Catering, Inc.,* 133 P.3d 655, 662 (Alaska 2006) (citing *Kinzel,* 93 P.3d at 434).

12. *VECO, Inc. v. Rosebrock,* 970 P.2d 906, 920 (Alaska 1999).

13. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 263–64, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Although *Price Waterhouse* did not have a clear majority, Justice O'Connor's concurring opinion was widely seen as the holding of the case. *See Griffith v. City of Des Moines,* 387 F.3d 733, 743

(8th Cir.2004). But, because *Price Waterhouse* interpreted Title VII and had only persuasive authority, we were not obligated to adopt Justice O'Connor's interpretation.

14. *Price Waterhouse,* 490 U.S. at 240, 263–64, 109 S.Ct. 1775.

15. *Id.* at 276, 109 S.Ct. 1775.

16. *Loomis Elec. Prot., Inc. v. Schaefer,* 549 P.2d 1341, 1342 (Alaska 1976).

17. *Desert Palace v. Costa,* 539 U.S. 90, 98–99, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

18. *Id.* at 98–99, 123 S.Ct. 2148.

19. Brianne Schwanitz, *Mixed Motives for Firing Employees: Alaska's Inconsistent Standards and Its Failure to Follow the Changing Federal Tide,* 24 ALASKA L.REV. 287, 289 (2007).

employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Desert Palace* expressly relied on this statutory language in rejecting a "direct evidence" requirement for Title VII.[20] But Alaska statutory law contains no similar provision. Because neither party in this case comprehensively addressed this issue in their briefs [21] and because, as we discuss below, Smith's claims would fail under a mixed-motive theory even if we eliminated the "direct evidence" requirement, we decline to address this issue in this case.

Smith failed to present any evidence raising a genuine issue of material fact on his race discrimination claim under a mixed-motive theory. He acknowledges that Hess did not make any comments about race in the three sick-leave related disciplinary meetings. Smith claimed in his deposition that Hess ignored his June 4 complaint of racial discrimination, but it is undisputed that Hess communicated Smith's complaint to the EEO. The EEO investigated the complaint and issued a report in November. We conclude that the loose temporal proximity of Smith's complaint to his dismissal (approximately five months) and the general circumstances sur-

rounding his dismissal do not raise a question of material fact on whether his termination was motivated by race.[22]

Although Smith argues his discrimination claim under AS 18.80.220(a)(1), his argument would similarly fail under a retaliatory discharge theory under AS 18.80.220(a)(4).[23] We do not mean to imply that temporal proximity alone can *never* indicate that an adverse employment action was not motivated by a discrimination complaint,[24] but "as the period of time separating the two lengthens, the hint of causation weakens." [25] In this case, the five-month interval had so weakened the hint of causation that the proximity between Smith's complaint and his termination, without more, did not raise a question of material fact on whether his termination was motivated by the complaint.

Summary judgment was proper on Smith's race discrimination claim.[26]

### C. Summary Judgment Was Proper On Smith's Age Discrimination Claim.

■ Smith argues that the superior court erred in granting summary judgment on his age discrimination claim against the School District. He argues generally that the "circumstances of [his] work history" along with his "membership in the protected class" of

**20.** *Desert Palace,* 539 U.S. at 98–99, 123 S.Ct. 2148.

**21.** Both parties address *Desert Palace* only in passing, and Smith does not advocate eliminating the "direct evidence" requirement.

**22.** Cf. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir.1998) (holding, where discharge occurred five months after employee filed ADA discrimination charge with EEOC, that "when so much time passes before the adverse action takes place, the order in which the events occurred does not by itself suggest a causal link between them").

**23.** We also apply Title VII's pretext and mixed-motive frameworks to retaliatory discharge claims under the Alaska Human Rights Act. *Mahan v. Arctic Catering, Inc.,* 133 P.3d 655, 660 (Alaska 2006) (citing *Era Aviation, Inc. v. Lindfors,* 17 P.3d 40, 43 (Alaska 2000)).

**24.** Indeed, we have previously stated that "[c]ausation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action

and the allegedly retaliatory discharge." *VECO, Inc. v. Rosebrock,* 970 P.2d 906, 919 (Alaska 1999) (quoting *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731 (9th Cir.1986)). Smith did not assert a retaliatory discharge claim in his case.

**25.** *Davidson,* 133 F.3d at 511.

**26.** Although Smith primarily advances a mixed-motive theory of race discrimination, his claim also fails under a pretext analysis. A plaintiff must present something more than "unsupported assumptions and speculation" that an employer's stated reasons for termination were pretextual in order to survive summary judgment on a discrimination claim under a pretext theory. *Mahan,* 133 P.3d at 660. Smith argues that Hess's "readiness to consider him a malingerer" and the "close temporal relationship" between the June disciplinary conference and the October termination are evidence that the School District's reasons for terminating Smith were pretextual. These allegations are no more than "unsupported assumptions," and thus summary judgment was also proper under a pretext theory on his race discrimination claims.

people over the age of 40 raise a question of material fact whether age was a motivating factor in his termination.

Smith brings his age discrimination claim under AS 18.80.220(a)(1). Although we have yet to explicitly apply a mixed-motive analytical framework to an age discrimination claim under AS 18.80.220, our previous cases have implicitly acknowledged that a plaintiff may bring an age discrimination claim under a mixed-motive theory.[27]

The Supreme Court recently held in *Gross v. FBL Financial Services, Inc.*[28] that Title VII's mixed-motive burden shifting analysis does not apply to federal age discrimination claims under the Age Discrimination in Employment Act (ADEA).[29] The Court held that plaintiffs in mixed-motive cases must prove by a preponderance of the evidence that age was a "but-for" cause of the employment decision, instead of just a "motivating factor."[30] The Court based its holding on differences in the statutory language between Title VII and the ADEA,[31] its independent construction of the language of the ADEA,[32] and the problems lower courts had in applying the mixed-motive analysis.[33] The School District urges this court to adopt the Supreme Court's analysis in interpreting Alaska's age discrimination statute.

■ But while we look to federal discrimination law jurisprudence generally, "AS 18.80.220 'is intended to be more broadly interpreted than federal law to further the goal of eradication of discrimination.' "[34] The

Supreme Court's holding in *Gross* substantially relied on the differences between the ADEA and Title VII—differences that do not exist in Alaska's anti-discrimination law. In addition, adopting the Court's holding in *Gross* would result in a different analytical framework for age discrimination claims than for other discrimination claims—yet all are prohibited by the same sentence in the same statute. We decline to follow *Gross* and we expressly hold that a plaintiff can bring a mixed-motive age discrimination claim under AS 18.80.220.

■ Smith failed to present evidence raising a genuine issue of material fact on his mixed-motive age discrimination claim. Smith testified that he believed that age was a factor in his termination because he heard that a younger person was hired in his place.[35] But Smith had no first-hand knowledge that a younger person was hired in his place; his testimony was hearsay from an unnamed source. Hearsay statements that would be inadmissible at trial are inadmissible for the purposes of supporting a motion for summary judgment.[36] Because Smith failed to raise a genuine issue of material fact on whether his termination was motivated by age, summary judgment was proper on his age discrimination claim.

### D. Summary Judgment Was Proper On Smith's Disability Discrimination Claim.

■ We have previously held that "AS 18.80.220 imposes a duty on an employer

27. See e.g., *Villaflores v. Alaska State Comm'n for Human Rights*, 175 P.3d 1275, 1277 (Alaska 2008); *Villaflores v. Alaska State Comm'n for Human Rights*, 170 P.3d 663, 665 (Alaska 2007) (applying burden-shifting pretext analysis because it was "a case in which there [was] no direct evidence of discriminatory intent").

28. *Gross v. FBL Financial Servs., Inc.*, — U.S. ——, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009).

29. 29 U.S.C. §§ 621–34 (2006).

30. *Gross*, 129 S.Ct. at 2350.

31. *Id.* at 2348–50.

32. *Id.* at 2350–51.

33. *Id.* at 2351–52.

34. *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 912–13 (Alaska 1999) (quoting *Wondzell v. Alaska Wood Prods., Inc.*, 601 P.2d 584, 585 (Alaska 1979)).

35. The only other evidence in the record that might be interpreted as reflecting a discriminatory attitude based on age was a single comment by Hess. Smith testified that Hess told him: "I know you're close to your retirement. You've been with the District for a long time, but that doesn't mean I can't excuse you from your service." Even in the light most favorable to Smith, Hess's statement was a warning to Smith that his long service with the School District would not prevent his termination for other legitimate reasons.

36. *French v. Jadon, Inc.*, 911 P.2d 20, 24 (Alaska 1996).

to reasonably accommodate a disabled employee." [37] In order to show a prima facie case for a disability claim under AS 18.80.220, a plaintiff must show:

> (1) that he or she is an individual who has a disability within the meaning of the statute; (2) that he or she could perform the essential functions of the position he or she holds (with or without reasonable accommodation); and (3) that he or she has suffered an otherwise adverse employment decision because of the disability.[38]

An employer's failure to make reasonable accommodations for an employee's disability is an adverse employment decision for the purposes of the prima facie case.[39] Federal courts have held that the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances" once it is aware of the employee's disability.[40] An employer is liable for failing to provide reasonable accommodation if it is responsible for the breakdown in the interactive process.[41]

Smith argues that the superior court erred in granting summary judgment on his disability discrimination claim against the School District. He argues that the School District failed to accommodate his disability by failing to engage in an interactive process to identify an appropriate accommodation. The School District argues that it was engaging in the interactive process when Smith was terminated for other reasons. It argues that its duty to accommodate was cut off by Smith's termination for sick leave abuse, insubordination, and dishonesty.

Smith failed to present evidence raising a genuine issue of material fact on the third prong of the prima facie case—whether he suffered an adverse employment decision because of his disability. The School District was given notice that Smith's limitations might be a permanent disability when Smith provided a doctor's note detailing his "life-long" physical limitations on September 23, 2004. Yet Smith also stated to Hess that he was "physically able and ready to return to work" on September 23. Because Smith's personal account of his ability to work conflicted with the doctor's note, Hess told Smith that Smith would not be able to return to work until he provided a more detailed fitness for duty statement that included a description of his ability to restrain students. Smith provided another short doctor's note on October 7, but it did not reference his ability to restrain students. That day, Hess informed Smith again that he would remain on leave until he provided information on his ability to restrain students. Smith was terminated for other reasons on October 29.

Our review of the record indicates that there was no breakdown in the interactive process. Instead, the School District was in the process of attempting to obtain complete information regarding Smith's physical capabilities and limitations when he was legitimately terminated for other reasons.

Smith presented the School District with diametrically conflicting and facially irreconcilable information about his physical limitations and capabilities. His employment as an MHT required that Smith be physically capable of restraining students. Hess's evident concern was that Smith had placed the School District in a *Catch–22* position. Smith said that he was ready and able to return to work. The School District would expose itself to liability if it allowed Smith to return to work in the face of his physician's note stating that "[e]ven with surgery correcting his pain, he [would] have life-long limitations" preventing him from "performing duties such as restraining others." Hess reasonably required that Smith produce a physician's report indicating Smith's capabilities and limitations. Such medical information gathering was a preliminary step inherent in engaging in the interactive process.

---

37. *Moody–Herrera v. State, Dep't of Natural Res.*, 967 P.2d 79, 87 (Alaska 1998).

38. *Id.* at 88.

39. *Id.* at 88 n. 44.

40. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir.2005) (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir.2000)).

41. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir.2002).

Because Smith had not provided the requested information by the time he was terminated for other reasons, the interactive process had neither broken down nor advanced to a resolution. We gather this was the point the superior court was making when it ruled that the disability issues "hadn't yet played their way out in the system."

By requesting additional information, the School District engaged in the interactive process. The burden was on Smith to produce the oft-requested medical information. Because he did not do so, it was Smith, not the School District, who prevented progress in that process. Smith did not establish a prima facie case for a disability claim, and summary judgment on this claim was appropriate.

### E. Summary Judgment Was Proper On Smith's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing.

Smith also claims that the superior court erred in granting summary judgment on his breach of the covenant of good faith and fair dealing claim.[42] He advances a litany of arguments on why the School District's behavior was not in good faith and "bordered on the irrational."[43]

Every contract in Alaska includes an implied covenant of good faith and fair dealing.[44] "The covenant has both a subjective and an objective component."[45] An employer violates the subjective component of the covenant when it acts with an improper motive, such as when it "discharges an employee for the purpose of depriving him or her of one of the benefits of the contract."[46] The subjective element is based on the employer's motives, not on the employee's personal feelings.[47] "Therefore, the employee must present proof that the employer's decision to terminate him or her 'was actually made in bad faith.'"[48]

The objective component of the covenant "prohibits the employer from dealing with the employee in a manner that a reasonable person would regard as unfair."[49] We have stated that "[t]his covenant ... requires that an employer treat like employees alike."[50] An employer also breaches the objective component of the covenant by terminating an employee on unconstitutional grounds or for reasons that violate public policy.[51]

---

42. On appeal, Smith also argues that the superior court erred by treating him as an at-will employee. At the beginning of its oral ruling on the motion for summary judgment, the superior court stated that it "started [its] analysis by looking at the core principles of termination of an at-will employee." Smith was not an at-will employee, but instead was a union employee covered by a collective bargaining agreement. We find that the superior court's incorrect statement on Smith's employment status was not material to its otherwise legally correct analysis of his claims. Because the superior court applied the correct legal standard to Smith's claims, its statement regarding Smith's employment status was harmless error.

43. Smith argues that the School District's bad faith was shown by: (1) its demand that an employee unable to perform Mandt exercises attend the training; (2) its assumption that someone too ill to attend Mandt training was too ill to travel; (3) its assumption that employees on sick leave must remain in Anchorage and not fly to California; (4) its insistence that a boarding pass was the only or best evidence of past travel; (5) its failure to take Smith's record of service into account; and (6) its decision to hold Smith ineligible for reemployment. These reasons are mere argument and speculation—not evidence that creates a genuine issue of material fact.

44. *Mitchell v. Teck Cominco Alaska, Inc.*, 193 P.3d 751, 760 (Alaska 2008).

45. *Id.* at 761.

46. *Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 789 (Alaska 2002) (quoting *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999)) (alteration in original).

47. *Pitka*, 54 P.3d at 789.

48. *Id.* (quoting *Era Aviation*, 973 P.2d at 1141).

49. *Mitchell*, 193 P.3d at 761 (quoting *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1013 (Alaska 1999)).

50. *Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026, 1032 (Alaska 1999) (quoting *Jones v. Cent. Peninsula Gen. Hosp.*, 779 P.2d 783, 789 n. 6 (Alaska 1989)).

51. *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002).

Smith failed to present evidence raising a genuine issue of material fact on his claim that the School District breached the subjective component of the covenant of good faith and fair dealing. None of the evidence Smith puts forward, even when viewed in the light most favorable to Smith, suggests that the School District discharged Smith for the purpose of depriving him of any of the benefits of his employment contract such as his retirement benefits.

Smith also failed to present evidence raising a genuine issue of material fact on his claim that the School District violated the objective component of the covenant. Although the question of what a reasonable person would find to be unfair is usually a question for the trier of fact,[52] this does not relieve Smith of the burden of presenting admissible evidence to successfully oppose a motion for summary judgment.[53] In *Witt v. State, Department of Corrections*, we held that an employee did not meet his burden of presenting evidence that he was unfairly terminated when he failed to introduce evidence showing that he was fired for any reason other than poor job performance.[54]

▆▆ Like the plaintiff in *Witt*, and as discussed above, Smith failed to present evidence that the School District terminated him for any reason other than its stated reasons: sick leave abuse, insubordination, and dishonesty. The School District did not violate Smith's constitutional rights or public policy by terminating him for those reasons.

Furthermore, Smith did not present evidence suggesting that the School District treated Smith differently from any other employee.[55] Smith claims that it was "irrational" for the School District to suspect Smith of sick leave abuse because he could have traveled while sick, but "it is not unfair for an employer to question or disbelieve, in good faith, an employee's version of events."[56] Under the circumstances of this case, it was not unfair for Hess to disbelieve Smith's story that he had not been in California during work hours and had only traveled during the intervening weekend hours, and the School District did not violate the covenant of good faith and fair dealing by terminating him after he failed to corroborate his story.

We have also held that employers may violate the covenant of good faith and fair dealing by following unfair procedures in an employee's termination, even where the employer's grounds for termination were fair.[57] Smith claims that it was "irrational" for the School District to require a boarding pass as evidence of his travels, but he produced no evidence suggesting that the School District acted unfairly. After their initial September 8 disciplinary meeting, Hess gave Smith ample time to provide documentation of his travel dates and extended Smith's deadline to provide documentation three times. Although Smith now argues that Hess should have accepted affidavits as alternate documentation, Hess testified that Smith did not offer to provide alternate means of proof. Hess's evident purpose in demanding proof

52. *See Holland*, 993 P.2d at 1032 (citing *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992)).

53. *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1036 (Alaska 2003) (holding that the State was entitled to judgment as a matter of law because employee had not introduced admissible evidence showing that he was hired or fired for an improper reason). *See also* Alaska R. Civ. P. 56(c).

54. *Id.* at 1035–36.

55. Hess testified, and Smith does not dispute, that the School District takes sick leave abuse very seriously and that other employees were also terminated for sick leave abuse. *Cf. Mitchell v. Teck Cominco Alaska, Inc.*, 193 P.3d 751, 761–62 (Alaska 2008) (holding that summary

judgment was inappropriate where employee created an issue of triable fact about whether he was disciplined more severely than other employees who violated sexual harassment policy).

56. *Holland*, 993 P.2d at 1036.

57. *Id.; see also Mitchell*, 193 P.3d at 761 (holding that summary judgment was inappropriate where employee raised triable facts on whether employer gave employee notice and an opportunity to present evidence); *Willard v. Khotol Servs. Corp.*, 171 P.3d 108, 116 (Alaska 2007) (holding that summary judgment was inappropriate where employer's "investigation" consisted only of second-hand information); *Luedtke*, 834 P.2d at 1225–26 (holding that employer violated covenant by testing employee for drugs without prior notice when, among other things, no other employee was similarly tested).

*generated by the airline* of the dates of Smith's travel was to see whether Smith traveled on the two work days he had asked and been denied to take personal leave— Friday and Monday—or if Smith actually traveled as he claimed—on the red-eye flight late Friday or early Saturday morning, and returning shortly after midnight Monday morning. We conclude that a reasonable person would not consider the School District as having treated Smith unfairly by demanding corroborating travel documentation generated by the airline.

Because Smith did not raise a genuine issue of material fact on his claim that the School District breached the covenant of good faith and fair dealing, summary judgment was appropriate.

## IV. CONCLUSION

For the preceding reasons, we AFFIRM the superior court's grant of summary judgment on all of Smith's claims.

FABE, Justice, not participating.